## SNEDICOR vs. DAVIS.

1. A deputy clerk in this State is liable to his principal alone for a default committed, whilst acting within the scope of his duties and in the name of the principal.

2. The cause of action for the negligent or unskilful performance of his duty by a deputy clerk, whereby his principal is exposed to a suit for damages, accrues at the time the act complained of is done, and not when the consequent injury is developed. Whether if the suit be instituted before the actual injury is ascertained, the recovery should be for the probable prospective, or only nominal damages—QUERE?

3. The lapse of six years from the time of the default, or at least from its discovery, is a complete bar, whatever the form of action, although the actual damage to the principal may not have been then ascertained.

Error to the Circuit Court of Greene. Tried before the Hon. John D. Phelan.

THIS was an action on the case by the plaintiff against the defendant in error to recover damages for the default of the latter, as deputy clerk of the County Court of Greene, in taking insufficient security on a writ of error bond in a case in which one Cawthorne was plaintiff and one Pearson defendant, in consequence of which the plaintiff in error, who was the principal clerk of said court, was sued by said Cawthorne and compelled to pay the debt. The defendant pleaded the statute of limitations of six years, to which there was a replication. From the pleadings it appears that the writ of error bond was taken in March 1840, and the judgment which it superseded affirmed in

the Circuit Court of Greene in October of the same year; that an execution thereupon issued against Pearson and the security in the bond, which was returned on the 24th February 1841, no property; and that judgment was recovered in a suit for the default by Cawthorne against the plaintiff in error at the October term 1846, of the Circuit Court of Greene, which he has paid. This action was brought on the 15th day of March 1848. The defendant demurred to the plaintiff's replication, and the court sustained the demurrer, and this is now assigned as error.

HALE and MURPHY, for the plaintiff:

The only question presented by the record is whether the statute of limitations, which defendant interposed by his plea, commenced to run from the taking of the insufficient bond by him, or only from the time that Snedicor's liability for the default of his deputy was fixed by the institution of suit and recovery of judgment against him by the plaintiff in the original judgment? We say that the statute commenced to run as against Snedicor only from the time his liability was fixed by the recovery of judgment; or at all events not until the institution of suit against him by the plaintiff in the original judgment—and to sustain this view submit the following points:

1. The statute of limitations does not begin to run against the plaintiff until his cause of action accrues, and no cause of action accrues as long as the liability of the defendant or rights of the plaintiff depend upon a contingency which may or may not happen; and the liability of Davis to Snedicor depended upon a contingency which did not happen until the recovery of the judgment against him for the default of Davis as his deputy. The statute therefore runs only from that time as between these parties.—4 Day's Rep. 476; Montgomery v. Hernandez, 6 U. S. Cond. Rep. 478; same case reported, 12 Wheat. 134; Bailey v. Hall, 16 Maine 408; Walker v. Bradley, 3 Pick. 261; Miller v. Eskridge, 1 Ired. 147; Neal v. Cuningham, 2 Port. 171. I note the case of Montgomery v. Hernandez particularly because the court say in delivering the opinion, "The breach in the condition of the bond took place more than six years before the institution of the suit, yet the plaintiff's right of action did not accrue until within six years, and that therefore the act of limitations constituted no bar to the action." So in

Snedicor v. Davis.

this case, the breach of Davis' official duty as deputy clerk took place more than six years before the institution of this suit, but the injury was sustained by *this plaintiff* and right of action accrued to him within six years. The breach by Davis of his official duty was no immediate and direct injury to this plaintiff, but it was an immediate and direct injury to the plaintiff in the judgment that was superceded by his act; and only indirect and consequential to Snedicor, dependent upon the happening of a future contingency; and as we have seen, no action accrued until the contingency happened. And in the case of Neal v. Cuningham, *supra*, which was an action by the principal sheriff against the executor of his deputy, the court decided that no claim accrued to the principal sheriff on account of the default of his deputy until a judgment had been obtained against him and he compelled to pay the money—a case directly in point with the one at bar, sustaining every principle for which I contend— and the doctrine of this last case is affirmed in Lightfoot v. Jones, 10 Ala. 18, where the court says that when the right of action depends upon a *contingency* the statute does not run until the contingency happens. The cases of a security paying money for his principal, or a vendee purchasing property from a vendor who has no title, present a principle strongly analogous to the one involved in this case, and in such cases the courts decide that the action accrues not from the default of the defendant, but from the time of the injury to the plaintiff, by the payment of the money in the one case and the loss of property in the other.—3 N. H. Rep. 270; Thompson v. Sternes, 2 Nott & McCord, 494; 4 Day's R. *supra;* 9 Leigh, 473; 4 Yeates, 109; 5 Humph. 629; Broughton v. Robinson, 11 Ala. 923 ; Pinkston v. Huie, 9 ib. 257; 10 ib. 26. Now in the case of a surety the default of the principal makes the surety liable to the creditor, yet in contemplation of law he has suffered no injury and has no right of action over against his principal until his liability is enforced, then it is that he sustains an injury for which an action accrues. So in this case the default of Davis rendered Snedicor liable to the plaintiff in the original judgment, but like the case of the security that liability might never be enforced, and until it was enforced no injury was sustained by Snedicor, and consequently no action accrued. Now it is clear in this case that an action lay in favor of the plaintiff in the judgment superceded

against Davis, because he was the person that in fact did the injury, (12 Mass. 449,) and if full damages had been recovered against him by the plaintiff in the judgment for his unlawful act, will it be contended that Snedicor might have sued him too? Although in the event supposed he had sustained no imaginable damages, surely he could not subject Davis to a double satisfaction for the same injury, and until Snedicor was actually sued and compelled to pay the money, *non constat* but that the party injured would compel Davis to make reparation by suit against him, or that Davis would voluntarily make reparation for his own unlawful act, as he was in duty bound to do, and in either event Snedicor would have had no possible claim against him.

2. Davis as deputy clerk, under our statute, is a public officer, (see Clay's Dig. 146, § 19; 7 Ala. 138,) and as such his duties and liabilities are fixed by law and not by any contract; (because if he had made a contract in violation of law, agreeing to do what the law prohibited, it would have been a mere nullity.) Any default or malfeasance then is a violation of law for which he is responsible to the party injured; and the party complaining must show some special damage peculiar to himself, (19 Johns. 223,) and until that damage accrues the statute does not run.— Roberts v. Real, 16 East. 408, 215; West v. Rice et al. 9 Metc. 564; Rice et al. v. Hosmer, 12 Mass. 130; 17 ib. 60. In this view of the case, see 2 Port. 271; U. S. Cond. R. *supra*. Now the taking of an insufficient bond in this case was a special and particular damage to the plaintiffs in the original judgment, because thereby they lost their debt; and only contingent and consequential to Snedicor, dependent upon the acts of a third person over whom he had no control. Now Snedicor as the principal clerk is responsible to the party injured for the default of his deputy. Suppose instead of being the principal clerk he had been the security of Davis, then he would have been responsible in the same way to the party injured, and Davis' default would have fixed a contingent liability upon him as the security, which the party immediately injured might or might not enforce; but as we have seen *supra*, Snedicor in the case supposed, could have maintained no action against Davis until that contingent liability was enforced against him and he thereby injured; now by parity of reasoning does not the same doctrine hold in this case?

3. If Davis be considered not a public officer, but as a naked *tort feasor*, then the action is for the recovery of special consequential damages resulting from the tortious act of Davis in violation of a legal duty, and to sustain this action there must be a wrong done and damage suffered, (Story on Agency, § 236 ; 7 Eng. Com. Law, 348;) also, Story on Agency, § 222, where it is laid down that there must be a "; real actual damage and not a mere possible or probable one," and in such a case the statute runs not from the time of the tort, but from the time of the injury.—See Roberts v. Real ; Miller v. Eskridge, *supra;* 2 Sand. P. & E. 645. Now what real *loss or actual damage* had Snedicor sustained until suit was brought against him? It was at most a *damnum absque injuria* for which no action would lie.

4. Should it be contended in opposition to the positions above taken by us, that this action although in form an action of tort is *quasi* an action of *ex contractu*, then it becomes necessary to enquire what is the contract that the law implies from the relation of the parties as principal and deputy? We say that it is one of indemnity; that the law imposes upon the deputy an obligation to indemnify his principal for any loss that he may sustain by the unlawful or improper act of such deputy.—1 Livermore on Agency, 363; Story on Agency, 210, § 217, also p. 212; 1 Maryl. Dig. 218, § 9; 10 Leigh, 581; 2 U. S. Dig. *supra,* 350, § 42. And if the contract between parties be one for indemnity by the deputy, then that contract is never broken until a loss is sustained by the principal, and as a consequence the the statute cannot run until that event.—Reynolds v. Magnus, 2 Ired. 26; 12 Gill & Johns. 48.

J. B. CLARKE, with whom was ERWIN, for the defendant:

1. The plea of the statute of limitations is a bar to a recovery, where the act of negligence, deceit or misconduct complained of was done or omitted, more than six years before suit brought.—Governor, use &c. v. Gordon, 15 Ala. 72; Mardis' Adm'rs v. Shackelford, 4 ib. 506 ; Bank of Utica v. Childs, 6 Cow. 238 ; Hall v. Tomlinson, 5 Verm. 228; Wilcox v. Ex'rs of Plummer, 4 Port. 172; Howell v. Young, 5 Barn. & Cr. 259; 11 Eng. C. L.; Angel on Lim. 123 to 127.

2. No action could have been maintained by Cawthorne, the original plaintiff, against Davis, the deputy of the plaintiff, for

the misfeasance.—4 Bibb 494, citing 1 Washing. Va. R. 159; Bacon's Abr. (title Sheriff, letter H) ; Chitty's Pl. 69-73; *Vide*, also, 2 Pirttle's Digest, 385, § 29.

CHILTON, J.—The only question in this case is whether the statute of limitations of six years commences running from the time that the default of the deputy occured, which ultimately caused his principal to pay the demand of Cawthorne, or from the time that the injury to the principal was developed. It appears that more than six years have elapsed since the sheriff returned an execution issued against the principal and security upon the writ of error bond no property, &c., so that Davis had not only by his negligence taken insufficient surety on the bond, but this insufficiency had been determined by a return of the execution on the affirmed judgment by the proper officer unsatisfied.

It is contended with much ability and zeal by the counsel for the plaintiff in error, that the statute did not begin to run against the plaintiff until the recovery of a judgment against him by Cawthorne for his deputy's default—that until then it was doubtful whether the plaintiff would sustain any damage from the negligence or wrongful act of the deputy, and to this point they cite many authorities, some of which we will presently examine. Before proceeding to examine the cases, we will take occasion to observe that although by the act of 1836 the deputy clerks of the respective clerks of this State are empowered " to transact all business in the absence of the principal which the latter could do were he present, first taking an oath to support the constitution and faithfully to discharge the duties of deputy clerk of the court in which he acts"—(Clay's Dig. 146, § 19)— yet the design of the Legislature by this enactment was not to create him a separate and distinct officer of the court or to destroy the relation which subsisted between him and his principal. He is deputed or appointed by his principal and is amenable to him, and his principal is amenable for his acts to parties who may be injured by them, if such acts come within the scope of the duties and business assigned him. It is unnecessary now to determine whether if he do an act in his own name as deputy clerk under this statute, without purporting to do it in the name or on behalf of his principal, he would not be liable to

the party directly who might be injured by his negligence? This is not the case before us. Here he approved the bond in the name of his principal, and on his behalf as his deputy; and we do not entertain a doubt of his immediate liability to his principal, who with his sureties alone must answer to the party injured for the unlawful act of the agent or deputy.—McNutt v. Livingston, 7 Smede & Mar. Rep. 641. The deputy is not required to enter into any bond for the security of the public. He may be appointed even without writing, (Stewart v. Desha, Sheppard & Co. 11 Ala. 844,) and displaced at the pleasure of the principal. He is subject to the principal's control and bound to conform to his requirements and to obey his behests. When therefore he does an act in the name and on behalf of his principal falling within the scope of his ordinary duties, it would be unreasonable and unjust to hold him responsible for it to a third party, when it is presumed to be done by the command of the principal although the principal may not be present. It seems to us that the same doctrine which applies to deputy sheriffs equally applies to deputy clerks, unless an exception obtain against the latter when in the absence of the clerk they assume to act in their own name under the statute above refered to. In Pond v. Vanderveer, at the present term, we held the deputy sheriff not responsible, except to his principal, for a default occuring in the management of his official business, and such seems to be the well settled doctrine in England and in this country, where no statutes control it.—Owens v. Gatewood, 4 Bibb, 494, and cases cited; 8 Bacon's Abr. (Bouvier,) tit. Sheriffs, H., and cases cited in notes. But we turn to the question as to when the cause of action accrued. What is the cause of action? The answer plainly is, the negligence of the deputy in taking and approving the bond with insufficient security by means of which his principal, the plaintiff, was exposed to an action on the part of Cawthorne, the plaintiff in the superseded judgment. But it is replied that although this is the cause, yet no injury was sustained by Snedicor, the principal, and no damage could have been recovered until he had sustained some loss by the commencement of suit or recovery of judgment against him by the party whose interest was directly affected. And just here, we may be allowed to observe, consists the error of the argument of the plaintiff's counsel. That the negligent act of the deputy

on account of which his principal was immediately exposed to an action for damages and made liable to pay the debt, is sufficient to authorise the latter to maintain an action, is, we think, an undeniable proposition of law. He has by his negligence or tortious breach of duty made his principal liable as security to pay the whole debt, and that too when the parties primarily liable are insolvent, as it seems they were in this case. No one will contend that this is not an injury. But the consequential damage is not fully developed. Cawthorne may or may not sue, or if he sue, he may fail to obtain a judgment, and it is argued that this uncertainty as to whether any special damage will ever accrue shows that the action does not accrue until such damage is sustained or becomes developed. Let us test this for a moment. Suppose Cawthorne had immediately sued Snedicor for the negligence and had recovered say five hundred dollars—then the damage would have been reckoned certain : Davis is then sued by Snedicor and this $500 and the cost are recovered from him : But Cawthorne afterwards takes his case to the Supreme Court and reverses it and then recovers $1000—what then? Can Snedicor sue Davis again, and *toties quoties?* I know of no law which would authorise such subsequent action. Now I concede the general rule to be, as Chief Baron Comyn states it, "that damages are only allowed to the time of the action commenced."—Comyn's Dig. Damages, D. But this general rule is subject to the important qualification, " that the plaintiff is at liberty to prove and the jury are bound to take into consideration those direct and immediate consequences of the act complained of which are so closely connected with it that they would not of themselves furnish a distinct cause of action."—Sedgw. on the Meas. of Dam. 104-5. The case of Fetter v. Beal, 1 Lord Raym. 339, is an apt illustration of the principle here contended for. The plaintiff had sued for a battery and recovered a small sum, £11. Afterwards, as a consequence of the wound a part of his skull came out and he sued again to recover for this subsequent damage. But it was held that the jury must have considered the nature of the wound and have fully compensated the plaintiff for it. Lord Holt, C. J., said, "If this matter had been given in evidence, as that which in probability might have been the consequence of the battery, the plaintiff would have recovered damages for it. The injury which is the

foundation of the action is the battery, and the greatness or consequence of that is only in aggravation of damages."—Ib. 692; Sedgw. on Dam. 105. The same doctrine was laid down in Howell v. Young, 5 Barn. & Cres. 259; (S. C. 11 Eng. Com. Law R. 219.) In that case an attorney was sued for failing to exercise due care and diligence in ascertaining whether a warrant of attorney and certain mortgages on freehold and leasehold premises furnished good security for the repayment of £3000, proposed to be loaned on the faith of them. He had been retained for that purpose in 1814 and represented the security sufficient. The interest was paid up to 1820, when it was discovered that the security was insufficient. It was held that the default of the attorney constituted the gist of the action, and that the statute of limitations began to run from the time of the default, and not from the time that the securities were ascertained to be insufficient. In that case as in this the default or negligence was the cause, the special damage afterwards occuring the consequence, and it could not be said that the party in either case had furnished a cause of action against himself within the time prescribed by the statute as a bar, when it is conceded that neither had done any thing within that period. It is perhaps unnecessary for us now to decide whether if Snedicor had sued Davis for the negligence complained of immediately after it occurred, or after it was ascertained by a return of *nulla bona* that the bond he had taken was insufficient, he could have recovered the probable prospective damage. We are aware that it is a very uncertain means of arriving at justice, and that the propriety of the rule is questioned by very respectable American authorities.—Sedgw. on Dam. 109, citing Wilcox v. Plummer's Ex'rs, 4 Peter's R. 172; see, also, Mardis' Adm'rs v. Shackelford, 4 Ala. 506, where this court *arguendo* seem to indicate the rule to be that nonimal damage could alone be recovered. We are inclined to follow the English rule as approximating nearer the justice of the case, but leave the point undecided, as in our opinion, whether the party could or could not recover more than the damages which had accrued within the six years from the happening of the deputy's default, by any action he could have commenced within that period, still this does not affect the position that the statute dates from the time the malfeasance or omission which occasioned the damages oc-

curred, or at least in this case from the time that it was ascertained that Cawthorne could not render the security taken by the deputy available. We think this position is most fully sustained by the Supreme Court of the United States, in Wilcox v. Plummer's Ex'rs, 4 Peter's R. 172; Mardis' Adm'rs v. Shackelford, *supra*; Governor, use &c. v. Gordon, 15 Ala. R. 72-5, and the authorities there cited; see, also, Argall v. Bryant, 1 Sandford's Sup. Ct. Rep. (N. Y.) 98, and cases cited. And the same rule will apply whether we regard the action purely in tort or in the nature of an action *ex contractu*.—Argall v. Bryant *supra*. In each the violation or breach of duty which may cause the damage is the gist of the action. So it is said, " The gist of the action of assumpsit for the violation of a special contract is the breach of such contract, and not any resulting or collateral damage occasioned thereby. The statute runs therefore from the time the contract is broken, and not from the period when any damage arising therefrom is sustained by the plaintiff; and although such damage accrue within six years, the action is defeated by the statute if the contract was broken beyond that period."—Angel on Limit. 124, citing Howell v. Young, *supra*, and Rankin v. Woodworth, 3 Penn. Rep. 48. A contrary doctrine would in many cases entirely defeat the object of the statute and postpone the time within which actions might be brought to an indefinite period.

But it is insisted that the cases above refered to are not applicable to this; that in these the default happened between the parties directly to be affected, but in this Snedicor was only consequentially to be affected, and that as the damage he sustained depended upon the action of the creditor whose debt had been lost by the deputy's default, it was in its nature contingent, and until it happened could furnish no ground of action. This objection we have anticipated by showing that an action did immediately accrue to Snedicor as soon as his deputy by his negligent act made him a guarantor of the sufficiency of the writ of error bond. Now when the consequential damage is the cause of action, as in the cases of Roberts v. Read, 16 East. 216, and Miller v. Eskridge, 1 Ired. 147, it is clear that the statute dates from the happening of the consequence complained of. We have carefully examined the authorities cited by the plaintiff in error and so ably commented on by them, and with-

out extending this opinion by a particular examination of them, are satisfied that they do not establish the contrary of the proposition for which we contend.

The view we have taken shows that the judgment of the Circuit Court must be *affirmed*.