## PARISH *vs.* GATES, Adm'r, &c.

[BILL IN EQUITY TO HAVE ABSOLUTE BILL OF SALE DECLARED MORTGAGE.]

1. *Privileged communications.*—The rule which protects professional communications, is founded in public policy, and extends to all information acquired by an attorney from his client, touching matters that come within the ordinary scope of professional employment; but, where two contracting parties employ an attorney to draw up their contract, and make their communications to him in the presence of each other, each thereby waives, as against the other, his right to treat those communications as confidential, and each is entitled, in asserting his rights under the contract, to a disclosure of its stipulations from the attorney.

2. *Admissibility of parol evidence to show absolute deed intended as mortgage.*—The rule has been too long settled in this State, now to be disturbed, that a deed, or bill of sale, absolute on its face, may be shown by parol evidence to have been intended only as a mortgage.

3. *Absolute bill of sale held mortgage.*—A bill of sale of slaves, absolute in form, decreed a mortgage, against the denial of the answer on information and belief, on proof, by the attorney who wrote it for the parties, that it was purposely made absolute on its face, but was intended only as a security for a debt assumed by the vendee, and that, on the re-payment of the money, the vendor should have the slaves; it being shown, also, that the value of the slaves greatly exceeded the amount of the assumed debt, and that the slaves continued in·the possession of the vendor.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. ALEX. McKINSTRY.

THIS bill was filed by Calvin E. Parish, against the administrator of Augustus T. Redus, deceased ; seeking to have an absolute bill of sale for several slaves declared a mortgage, and to recover the balance realized on a sale of them by the mortgagee after deducting the amount of the debt. The bill alleged, that the complainant, being indebted to the Bank of Mobile, had mortgaged several slaves to secure said indebtedness ; that a settlement of said debt was had with the Bank in 1849, when a balance was found against him of about $1300 ; that said Redus, for the purpose of securing this debt, and for the accommodation of complainant, executed his three notes to the Bank, payable in one, two and three years, with interest from date, and with said notes said debt was fully satisfied, but it was agreed between complainant and said Redus that the former should pay said notes ; that to indemnify Redus against loss on account of said notes, in the event he should be compelled to pay them, complainant executed to him a bill of sale for three of the slaves previously mortgaged to the Bank, and the president of the Bank, for the purpose of releasing its title, joined in the conveyance; that complainant, for the same purpose, executed to Redus a bill of sale for two other negroes ; that both of these bills of sale were absolute in form, but were only intended to secure Redus against liability on said notes ; that the possession of said slaves was never changed, but continued with complainant until after the death of Redus ; that two of said notes were paid by Redus in his lifetime, and the third has since been paid by his administrator, who afterwards took possession of said slaves, during complainant's absence from home, and sold them as the property of his intestate's estate ; and that the proceeds of sale largely exceeded the amount paid on said notes.

The administrator of Redus answered the bill ; denying, on information and belief, the alleged contract ; insisting that the transaction was, and was intended to be, an absolute sale; admitting that the possession of the slaves was allowed to remain with Parish, for the use and benefit of his wife, who

was the mother-in-law of Redus, and with whom Redus and his wife then resided ; and alleging that Parish was utterly insolvent when he executed said bills of sale.

The complainant took the deposition of Alex. McKinstry, by whom the bills of sale were drawn, and whose testimony, in substance, was as follows : That "the arrangement between the parties was, that Redus should pay to the Bank the indebtedness of Parish, and Parish should re-pay to Redus such amount, and when it was so paid the negroes were to become the property of Parish"; that the bill of sale was drawn by the joint direction of the parties, and it was the understanding of both parties that the conveyance should be absolute in form. In answer to the cross-interrogatories, he further testified, that all his knowledge of the transaction was derived from communications made to him, as an attorney, by both parties, in the presence of each other ; that he had been the attorney of Redus for several years previous to that time, but had never before acted in that capacity for Parish ; and that the "substance" of what passed between the parties was, "that Parish was much involved in debt, and Redus was to aid him in paying the debt to the Bank of Mobile, and was to take the negroes that were in the hands of the Bank—that when the debt assumed by Redus was re-paid to him by Parish, the negroes were to be his ; that this mode of conveyance was resorted to, to protect Redus, and that they should be known to be his property, and not the property of Parish." The defendant objected to the examination of McKinstry as a witness, on the ground that the matters as to which he was interrogated were privileged communications ; but the chancellor refused to suppress his deposition on that ground.

On final hearing, the chancellor dismissed the bill, on the ground that the transaction was a conditional sale, and not a mortgage ; and his decree is now assigned as error.

E. S. Dargan, for the appellant.—1. The principle cannot now be controverted, that a bill of sale, absolute in form, may be shown by parol to be a mortgage.—English v. Lane, 1 Porter, 328 ; Kennedy v. Kennedy, 2 Ala. 589 ; Bishop v. Bishop, 13 Ala. 475 ; Turnipseed v. Cunningham, 16 Ala.

501 ; Brantley v. West, 27 Ala. 542–52. It may be true that, when the question was first presented, the court went on doubtful ground ; but, be that as it may, it has now become the settled doctrine of this court, and may be considered a rule of property. Taking the rule as established, the evidence brings this case within its influence. The value of the slaves was more than double the debt assumed by Redus. They remained in the possession of Parish. The Bank abated a part of the debt for his benefit. Added to these indisputable facts, the testimony of McKinstry establishes the fact beyond controversy, that the bill of sale was intended as a mere security. Redus is dead, and his administrator answers only from information and belief. Courts of equity do not incline to construe instruments with a defeasance as conditional sales, unless such clearly appears to have been the intention of the parties ; but, in all doubtful cases, hold the instrument a mortgage.—16 Ala. 501, and cases there cited.

2. But it is said that McKinstry's testimony cannot be received, against the objection of the defendant, because the parties applied to him as an attorney. But the rule which protects privileged communications, does not extend to such a case. Both parties applied to him to draw the bill of sale, and both communicated to him the terms and conditions of the contract. To allow either party, under such circumstances, to close the mouth of the only witness to whom the terms of the contract were confided, would be a fraud on the other. The rule of exclusion is founded on policy, and ought to be strictly confined to the objects and reasons on account of which it was adopted.—14 Pick. 416, 422. That the rule does not apply, where two parties apply to an attorney to do an act for them, or to advise them concerning an act about to be done between them, see Phillipps on Evidence, last edition, vol. 1, p. 173 ; Warde v. Warde, 5 English Law & Equity R. 217.

3. Neither the allegations nor the testimony sustains the position, that the whole contrivance was a plan to defraud the creditors of Parish.

Wm. G. Jones, *contra.*—1. McKinstry expressly states, that all he knows about the contract and understanding between

the parties, was communicated to him professionally. It was, therefore, a privileged communication, and should have been suppressed.—Greenleaf on Evidence, 5th edition, vol. 1, pp. 300–313, and cases there cited.

2. Parol evidence was not admissible, under the allegations of the bill, to show that the absolute bill of sale was intended as a mortgage. The decisions on the admissibility of parol evidence in such cases are conflicting and irreconcilable; a natural (if not inevitable) consequence of the relaxation of the salutary rule of evidence which excluded parol proof. No case is to be found, among our own decisions, precisely in point with this; and a fair opportunity is thus presented for an examination of the question on principle, and the adoption of a rule which is consistent with the principles of law, founded in sound public policy, and well supported by text-writers and judicial decisions of the highest authority. It is a general rule of evidence, prevailing alike at law and in equity, that parol evidence cannot be received to contradict, vary, or add to the terms or legal effect of a deed or other contract in writing.—3 Green. Ev. § 360; Stevens v. Cooper, 1 Johns. Ch. 429. The foundation of the exception, which is asserted in many cases, that parol evidence is admissible, in equity, to show that a deed absolute on its face was intended as a mortgage, is in the peculiar power and jurisdiction of courts of equity to correct mistakes, and to relieve against fraud or accident; and the best text-writers, as well as the most approved modern decisions, limit the exception to cases of fraud, accident, or mistake.—2 Story's Equity, § 1018; 3 Green. Ev. § 364; Lord Irnham v. Child, 1 Bro. C. C. 92; Hare v. Shearwood, 3 Bro. C. C. 168; 1 Vesey, 241; 6 Vesey, 333; 6 Iredell's Eq. R. 283; Thomas v. Mc-Cormick, 9 Dana, 108; Cook v. Eaton, 16 Barbour, 439; Powell on Mortgages, vol. 1, 120, note 2. The cases of McKinstry v. Conly, 12 Ala. 678, and Freeman v. Baldwin, 13 Ala. 246, recognize this principle.

The bill in this case does not allege, nor does the proof show, any fraud, accident, or mistake; on the contrary, McKinstry's testimony shows that the parties knew what they were doing, and purposely made an absolute deed. The court will not make for them a contract different from that which

they intentionally made for themselves.—7 Cranch, 218 ; 1 Peters, 1.

3. All the courts hold, that when parol evidence is received in such cases, it must be of the clearest and most satisfactory character ; and the evidence here is certainly not sufficient. The allegations of the bill are positively denied by the answer; and the only witness examined on the point, McKinstry, says that he cannot recollect with minuteness what passed between the parties. Besides, he testifies to· an agreement materially different from that alleged in the bill, and his statements are inconsistent with each other.

4. If, however, the parol evidence is admissible, and the proof corresponds with the allegations, the transaction was not a mortgage, but a conditional sale. It has none of the *indicia* of a mortgage : the relation of debtor and creditor, or of borrower and lender, did not exist between the parties; the transaction did not originate in a proposal to borrow money ; no note, or other evidence of debt, was given ; and no gross inadequacy of price is shown, for there is no evidence whatever of the value of the negroes at that time.—Barefield v. Murphy, 27 Ala. 634; Eiland v. Radford, 7 Ala. 724 ; Bogan v. Martin, 8 Ala. 807 ; Sewall v. Henry, 9 Ala. 24; McKinstry v. Conly, 12 Ala. 678 ; Freeman v. Baldwin, 13 Ala. 246.

5. The evidence shows that Parish was poor, and greatly involved in debt ; and that, if a mortgage was in fact contemplated, he knowingly and purposely executed an absolute bill of sale, for the purpose of more effectually deceiving and hindering his creditors. Under these facts, he can have no relief in equity.—9 Dana, 111.

STONE, J.—There is, perhaps, no principle of law which rests on a sounder basis, or which is supported by a more uniform chain of adjudication, than that which holds all information acquired by ·an attorney from his client, touching matters that come within the ordinary scope of professional employment, as privileged communications. " The protection is not confined to cases when proceedings are commenced ; for a person oftentimes requires the aid of professional advice, upon the subject of his rights and liabilities, with no reference

to any particular litigation, and without any other reference to litigation generally than all human affairs have, in so far as every transaction may, by possibility, become the subject of judicial inquiry." The rule is founded on public policy. It was adopted "out of regard to the interests of public justice, which cannot be upholden, and to the administration of justice, which cannot go on, without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations which form the subject of all judicial proceedings. If the privilege did not exist at all, every one would be thrown on his own legal resources. Deprived of all professional assistance, a man would not venture to consult any skillful person, or would only dare to tell his counselor half his case. If the privilege were confined to communications connected with suits begun, or intended, or expected, or apprehended, no one could safely adopt such precautions as might eventually render any proceedings successful, or all proceedings superfluous."— Greenough v. Gaskell, 1 Mylne & Keene, 98.

We have copied thus copiously from an opinion of Lord Chancellor Brougham, because it furnishes a forcible view of the rule and the reasons which uphold it. The books abound with decisions to the same effect; the later ones rather enlarging than restricting the privilege.—Cromack v. Heathcote, 2 Brod. & Bing. 4; Taylor v. Blacklow, 3 Bing. N. C. 235; Doe, *dem.* Peter, v. Watkins, *ib.* 421; 1 Greenleaf's Ev. §§ 237 to 248, inclusive, and authorities referred to; Parker v. Carter, 4 Munford, 275.

But do the facts of this case bring the communications made to Judge McKinstry within the operation of this rule? As we understand the testimony, Mr. Parish and Mr. Redus agreed on the terms of a contract, and, together, related those terms, and the objects they had in view, to an attorney of their common choice, that he might draw the conveyance. Parish and Redus were the contracting parties, dealing, so far as the testimony discloses, at arm's length; and we are not informed by the record that any other person was to any extent interested in the subject-matter of the negotiation between them. Neither of the contracting parties made any disclosure to, or sought any opinion from the attorney, which

he wished concealed from the other : neither sought or obtained any advice upon *any subject,* so far as we are informed. They had a common design ; he was conveyancer in common for both ; and, so far as these parties are concerned, their joint statement of the terms of the contract, under the circumstances shown in this case, was not a privileged communication. By selecting the *same attorney,* and making their communications *in the presence of each other,* each party waived his right to place those communications under the shield of professional confidence ; and in asserting their rights under the contract, each is entitled to a disclosure of its stipulations. Warde v. Warde, 5 Eng. Law & Equity, 217.

2. The rule has been too long established in this State, to be now disturbed, that a deed, absolute on its face, may be shown by parol proof to have been intended to operate as a mortgage ; and where the proof is strong and satisfactory, chancery will give effect to it as a security merely.—English v. Lane, 1 Porter, 328 ; Kennedy v. Kennedy, 2 Ala. 571, on p. 589 ; Eiland v. Radford, 7 Ala. 724 ; Bishop v. Bishop, 13 Ala. 475 ; Sledge v. Clopton, 6 Ala. 589 ; Turnipseed v. Cunningham, 16 Ala. 501 ; Locke v. Palmer, 26 Ala. 312; Brantley v. West, 27 Ala. 542 ; West v. Hendrix, 28 Ala.

One expression in Locke v. Palmer, *supra,* seems to be in conflict with English v. Lane and Turnipseed v. Cunningham. We do not desire to be understood as re-affirming that principle of the opinion. It reads as follows : " Upon a careful examination of the whole evidence, we have great doubt whether the parties contemplated an absolute sale. The inclination of our mind is rather that security only was intended ; and such being the fair result of the evidence, we are bound by the principles which govern courts of equity in this class of cases, to declare the contract a mortgage, instead of an absolute sale." We suppose this is a clerical error ; and that where the word "absolute" precedes "sale," the word *conditional* should be substituted. Thus corrected, the opinion is free from objection, and harmonizes with our former adjudications.

3. The testimony clearly shows that the contract in this case was intended to operate either as a mortgage, or as a conditional sale ; and if the latter, this bill is not so framed

as to entitle the complainant to relief. Conditional sales are not favored in law. In all cases of doubt, the court inclines in favor of mortgages. The general tests, in doubtful cases, are the adequacy of consideration, and the continuance or extinguishment of the debt. It was well said in argument, that there is no mortgage, where there is no debt ; there is no conditional sale, where the debt remains unextinguished. The testimony of the witness, McKinstry, proves to our satisfaction, that Parish was to repay to Redus the amount Redus should pay to the Bank. The witness employs no word, or sentence, implying doubt or contingency. His words are, " Parish should repay to Redus." This proves a continuing debt from Parish to Redus. There are other facts and circumstances which tend to show Parish's continuing interest in the slaves. He remained in possession and control of them. He conveyed five slaves to secure the payment of thirteen hundred dollars ; when the proof tends to show that they were worth greatly more money. The proof that a mortgage was intended is quite as clear in this case as it was in English v. Lane, *supra;* and we feel bound to declare the contract a mortgage.

4. It was contended in argument, that this contract was a secret trust, intended to defraud the creditors of Parish. Conceding the law to be as contended, there is no proof that he owed other debts, and no proof of any actual intention to defraud. We are not authorized to presume the existence of any fact, not shown by the record ; and this part of the defense fails for want of proof.

The decree of the chancellor is reversed, and the cause remanded, that a decree may be rendered in the court below, granting the prayer of the bill, and directing an account to be taken of the moneys paid by Redus to the Bank under the contract, and of the moneys realized from the sale of the slaves. Let the appellee pay the costs of this court, and let the costs in the court below be equally divided between complainant and defendant ; the costs imposed on appellee to be paid out of the effects of his intestate, in his hands to be administered.