# Mobile Building and Loan Association *v.* Robertson.

*Bill in Equity by Stockholder, against Building and Loan Asso-*
*ciation, for Injunction of Action at Law, to have Contract*
*declared Mortgage, and for Account and Redemption.*

1. *Intention of parties to contract; how ascertained.*—The courts have no
power to vary or mould the obligation of contracts, to meet the exigencies of
subsequent events, or the necessities or interest of the parties as developed
by those events : the character of the contract must be determined by the con-
curring intention of the parties at the time it was entered into ; and subse-
quent declarations of intention, by either party, when a diversity of interests
has been developed, favoring different constructions, are entitled to but little
weight in favor of the construction most beneficial to him.

2. *Mortgage; when contract will be construed to be.*—In determining whether
a particular contract is a mortgage, a conditional sale, or the mere reservation
of a right to purchase at a future time on specified terms, when the whole con-
tract is not expressed in writing in clear and unambiguous words, each case
must, of necessity, in a great measure depend on its own peculiar facts and
circumstances ; but, while the nature of the contract is a matter of fact, often
difficult to ascertain, the legal conclusions to be drawn from the facts, when
ascertained, are well defined and settled. If the transaction originated in
negotiations for a loan, or security for an existing debt, the necessities of the
debtor placing him at a disadvantage, courts of equity incline, in doubtful
cases, to construe the contract as mortgage, because that is less injurious in
its consequences. But, the fact that the transaction thus originated, or that
the relation of debtor and creditor existed between the parties, is not always
conclusive ; since both the parties may intend not to create or to continue a
debt, and there can be no mortgage where there is no loan or debt. Yet,
when a conveyance of land is intended as security for a debt, whether
pre-existing or contemporaneously created, a court of equity will hold
it to be a mortgage, without regard to its form, and without any express agree-
ment between the parties, but rather upon a general policy which they can not
contravene ; and it is not necessary that a note, bill or bond, or other indepen-
dent evidence of the debt, should be taken, though the absence of it is a cir-
cumstance adverse to such construction, dependent for its weight upon the
other facts and circumstances with which it may be connected.

3. *Same; contract between building and loan association and shareholder.*—In
this case, it was shown that a building and loan association, organized under
the general law (Rev. Code, §§ 1755–61), and having power to make loans to
its stockholders, secured by mortgage on real estate, and also to purchase and
lease property to them, advanced money to one of its stockholders, or at his
instance, in the purchase of a house and lot, taking the title to itself, and
leasing it to him, at a stipulated annual rent, payable monthly ; that the asso-
ciation covenanted to keep the premises insured, to the amount of the money
advanced, and, in case of a loss, to apply the proceeds of the insurance to
rebuilding or repairing for the benefit of the stockholder, who covenanted to
pay taxes and repairs ; that the privilege was reserved to the stockholder to
become entitled to a conveyance in fee, at any time during the continuance of
the lease, on making payment of the money advanced ; and that on partial
payments being made, not less than a specified sum, the insurance and rent
should be proportionally reduced ; and the contract was held to be, in legal
effect, a mortgage, though the writing was in form a lease.

VOL. LXV.

[Mobile Building and Loan Association v. Robertson.]

4. *Lien defined.*.—At common law, a lien imported a right to retain the possession of property until a demand was satisfied ; but it is now of more extended signification, and designates all the various charges on land or personalty created by contract, or by law; yet it never imports more than security.

5. *Usury.*—A stipulation for the payment of monthly rent, in a contract between a building and loan association and one of its stockholders, for the lease of a house and lot which the association had advanced the money to buy, taking the title in its own name, and binding itself to convey to him in fee on re-payment of the money advanced and expended, will be held usurious, when the contract is declared to be a mortgage at the suit of the stockholder, and the monthly rent reserved is fifteen per-cent. of the amount advanced.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. HURIOSCO AUSTILL.

The bill in this case was filed on the 26th April, 1877, by James Robertson, against the Mobile Building and Loan Association, a private domestic corporation chartered under the general law (Rev. Code, §§ 1755–61) ; and sought to enjoin an action at law, which the association had instituted against him, to recover the possession of a house and lot in the city of Mobile ; and also to have the contract on which the action at law was founded, or the transaction of which that contract was a part, declared to be a mortgage; and for an account, relief against usury, redemption, and general relief. The material facts of the case are stated in the opinion of the court. On final hearing, on pleadings and proof, the chancellor granted the relief prayed by the bill; and his decree is now assigned as error.

S. CROOM, for the appellant, cited *Haynie v. Roberston,* 58 Ala. 37 ; *Swift v. Swift,* 36 Ala. 147 ; *Murphy v. Barefield,* 27 Ala. 634 ; *West v. Hendrix,* 28 Ala. 226 ; *Beck v. Blue,* 42 Ala. 32 ; *Robinson v. Cropsey,* 2 Edward's Ch. 147 ; *Enlow v. Klein,* 79 Penn. St. 490 ; *Brown v. Harrison,* 17 Ala. 774; *Swilley v. Lyon,* 18 Ala. 552 ; 3 Parsons on Contracts, 137 ; Tyler on Usury, 185–88 ; *Burbridge v. Cotton,* 8 Eng. Law & Eq. 57 ; *Silver v. Barnes,* 6 Bing. 180 ; 5 Allen, Mass. 571 ; 13 Gray, 157 ; 5 Dutcher, N. J. 225 ; Abbott's Digest of Corporations, 441, sec. 21.

J. LITTLE SMITH, *contra,* cited *Miller v. Bates,* 35 Ala. 585–6 ; *Fleming v. Self,* 27 Eng. Law & Eq. 501 ; 6 Casey, Penn. 465; *Herbert v. B. & S. Association,* 1 Bush, Ky. 296; 39 Bush, Ky. 142, 154 ; 33 Barbour, 103–15 ; 2 Coldw. Tenn. 418 ; 24 Conn. 153 ; 41 Penn. St. 478 ; 50 Penn. St. 32 ; 5 Peters, 562.

BRICKELL, C. J.—The appellant derives its corporate existence from proceedings in conformity to the general law

(Code of 1867, part 2, chapter 3), authorizing the incorporation of building and loan associations, and other enumerated companies, or societies. The statute, otherwise than by designating the business of the company, or the name of the association or society, does not particularize the objects or purposes of any corporation formed under it. These were required to be expressed in the written declaration of the corporators, filed in the office of the judge of probate, which, when taken and construed in connection with the enumeration of the powers a subsequent chapter declares every private corporation to possess, becomes a charter.—Rev. Code, §§ 1767–9.

The objects of this association, as expressed in the declaration, are, to purchase, hold, and convey real estate ; to loan money thereon to members of the association, for building purposes, to be secured by lien on the land and buildings ; to rent and dispose of such property, when acquired, in such form and manner as by the by-laws of the association may be provided. The capital stock was fixed at two hundred thousand dollars, divided into shares of five hundred dollars each. Each shareholder was required to pay an entrance fee of five dollars, on each share of his stock, and thereafter, on the first Monday of each month, five dollars, until the dissolution of the corporation. Unless sooner dissolved by a vote of two-thirds of the members, the corporation was to continue, until there was a lot purchased, and a house built thereon, for every share of stock. The by-laws provided, that when, in the discretion of the board of directors, the funds accumulated warranted an investment, notice for applications for them should be given ; and if there was more than one application, it should be decided by lot who should receive them. The successful applicant could designate a lot upon which he wished a house built, accompanying the designation with a plan of the house. If the board of directors was satisfied, after an examination, that the title to the lot was good, and, considering its locality, the plan, and its cost, that the investment for the association was judicious, it was a duty to proceed to purchase the lot, taking title to the association, and to build thereon for the shareholder. In no event, could more of the corporate funds than two thousand dollars be expended. If the purchase of the lot, and the costs of the improvement, would exceed that sum, the shareholder, at whose solicitation the investment was made, furnished the excess. When the lot was purchased, and the buildings, if any were contemplated, were erected, the duty of the association was to execute a lease to the shareholder, at whose instance it had acquired the fee of the

land. The lease was for the term of one year, renewable at the pleasure of the shareholder, at an annual rent of fifteen per-cent. upon the amount expended by the association, payable in monthly installments; the tenant paying taxes, and covenanting to repair, and having the right of pre-emption so long as he continued in possession, and until the dissolution of the corporation. If default was made in the payment of the rent monthly, a fine of ten per-cent. per month on the amount of the rent for three months was imposed, and a default of three months operated a forfeiture of the lease.

The appellee, a shareholder, on the 1st October, 1869, for the purpose of purchasing lots situate in the city of Mobile, selected by him, and the purchase of which he negotiated, made application to the association for a loan, or advance, of two thousand dollars, to be applied to pay the purchase-money. It was agreed that the loan or advance would be made, on the terms prescribed by the by-laws, on the appellee making repairs and improvements on the premises, of the value of six hundred dollars. The repairs were made, the purchase-money paid, title to the lots conveyed to the association, and a lease executed to the appellee. The lease was for the term of one year, renewable at the pleasure of the appellee, and contains full covenants for his quiet enjoyment of the premises. The rent stipulated was three hundred dollars yearly, payable in equal monthly installments. It was stipulated that, at any time during the continuance of the lease, the appellee, upon making payment to the association, of the amount it had actually expended upon the premises, as shown by its books, should be entitled to a conveyance in fee. The privilege was reserved to him of making payments of the purchase-money, in sums not less than one hundred dollars; and upon any payment being made, he was entitled, from the day thereof, to a proportionate deduction from the rent. The association covenanted to keep the premises insured, to the extent of their costs; and in the event of loss, or destruction, to apply the proceeds of the insurance to *repairing or rebuilding, for the benefit of the appellee.* The amount of the insurance was subject to a proportionate reduction, if the appellee made payments of the purchase-money. The lease was not assignable, without the consent of the association; and during its continuance, the appellee, his heirs or assigns, were bound to continue members of the association, in good standing.

Under the lease, the appellee entered into possession, and paid the rents monthly, until the first of October, 1875, when disagreements occurring between him and the association, he refused to make any other payments. The association

(25)

instituted an action at law against him, upon the covenant in the lease for the rent accruing from the first day of October, 1875, to the first day of October, 1876. Thereupon, the appellee filed this bill for an injunction against the suit at law, and to have the contract declared a mortgage, for the redemption of the premises, applying the rents he had paid to the payment of the sum expended by the association in the purchase of the premises, with lawful interest thereon. On a final hearing, the chancellor, being of opinion the transaction was in effect a mortgage, and that the stipulation for rent was a mere device to obtain more than lawful interest on the money loaned, decreed the relief prayed. From that decree this appeal is taken, and it is here assigned as error.

The principal point of contention is as to the character of the transaction : whether, in fact, there was a loan of money to the appellee, the conveyance of the premises to the association, and the lease, being intended to secure repayment; or was it a lease, reserving to the appellee a privilege which he could exercise or not at his own option, of becoming the owner of the premises, on compliance with the specified terms, the parties, until the option was exercised, standing in the relation of landlord and tenant. There is no principle of law, or of equity, prohibiting these parties from entering into either contract; and either was within the scope of the corporate powers of the association. It had full capacity to become the mortgagee of real estate, when it was deemed necessary to secure the payment of money loaned, or the performance of any contract into which it could enter, or the observance of any duty it had the right to exact. It had full power to acquire real estate by purchase ; and its power of disposition extended to a sale absolute or conditional, or to leasing or renting. In the absence of fraud, or duress, the contract into which the parties may have entered, so far as it is not violative of law, must be enforced, according to their intentions, and its legal effect at the time it was made, though, in the presence of subsequent events, it is onerous and oppressive upon either, or either is, without the fault of the other, disappointed in realizing the benefits expected to result from it. The obligation of contracts can not be varied and moulded by courts, to meet the exigencies of subsequent events, or tempered to the pressure of the necessities of the parties.

The intention of the parties at the inception and consummation of the transaction—the relation it was contemplated they should bear to each other—is the criterion by which the character of the contract must be determined. There is much evidence introduced, having a tendency to

show that the transaction was regarded in the one light by the association, and in the other by the appellee. To this evidence, but little, if any importance, can be attached. It is not the intention of the one party, dissociated from the intention of the other, which is to be ascertained. It is their concurring intention, when the transaction ripened into the contract, which must be ascertained, and which must prevail.—*West v. Hendrix,* 28 Ala. 226 ; *McNeill v. Norsworthy,* 39 Ala. 156. Resting largely upon the inferences drawn from the contract, the relations of the parties, and the facts and circumstances attending the transaction, subsequent declarations of intentions, favoring that construction of the transaction which, when the contract is to be enforced, is most beneficial for the declarant, ought to have but little weight.

There are, in cases of this character, no tests to which the facts can be subjected, enabling a court to pronounce with positive certainty what is the real character of the transaction. When the whole contract is not expressed in writing, in clear and unambiguous terms ; when the transaction commences in negotiations for a loan, or the parties stand in the relation of debtor and creditor ; and the result is, that the creditor obtains an absolute conveyance, with an accompanying agreement to sell, or to reconvey ; it is often a matter of unmixed difficulty to determine satisfactorily what the parties really contemplate—whether mortgage, or a conditional sale, or the mere reservation of a right to purchase at some future time on terms specified. Every case, of necessity, depends in a great measure upon its peculiar facts and circumstances.—*Locke v. Palmer,* 26 Ala. 312 ; *Crews v. Threadgill,* 35 Ala, 334. While the real nature of the transaction is a matter of fact, difficult it may be to ascertain, yet, when the facts are ascertained, the conclusions which follow rest upon well-defined principles of law. Whenever the transaction originates in negotiations for a loan, or security for an existing debt, the necessities of the debtor place him at a disadvantage ; it can scarcely be justly said, that the parties deal " at arm's length ; " and lest he may be lured or forced into a conditional sale, or some other contract really a device for an irredeemable mortgage, in doubtful cases, courts of equity lean to a construction in favor of a mortgage, as less injurious in its consequences ; the creditor being fully compensated by the payment of the consideration money, and interest, and the debtor saved from the loss of his estate, because of his failure to comply with the condition at the precise time appointed.— *Turnipseed v. Cunningham,* 16 Ala. 501 ; *Locke v. Palmer,* 26 Ala. 312 ; *Crews v. Threadgill,* 35 Ala. 334; *Eiland v. Raiford,* 7 Ala. 724 ; *Rus-*

*sell v. Southard*, 12 How. 139. But, the fact that the relation of debtor and creditor existed, or that the transaction commenced with negotiations for a loan, is not, of itself, conclusive. A debtor, importuned for the payment of his debt, or a borrower pressing for a loan, will often intend to execute, and the creditor to accept, an absolute conveyance in satisfaction, or to purchase absolutely, or conditionally, rather than to make a loan. In such cases, as the transaction does not result in the continuance or creation of a debt, whatever may be its true character, there is not a mortgage ; for where there is no loan, or debt of personal obligation, a mortgage is impossible.—*Flagg v. Mann*, 14 Pick. 467 ; *Conway v. Alexander*, 7 Cranch, 218 ; *McKinstry v. Conly*, 12 Ala. 678 ; *Robinson v. Farrelly*, 16 Ala. 472 ; *West v. Hendrix*, 28 Ala. 226.

Every conveyance of land, without regard to its form, which is in fact a security for an antecedent debt, or for a contemporaneous loan, in the contemplation of a court of equity is a mortgage. It enures and operates as a mortgage only, conferring on the parties reciprocal rights and remedies. The grantee may resort to a court of equity to have it so declared, and for its forclosure, as well as the debtor for redemption.—*Bryant v. Cowart*, 21 Ala. 92 ; *Hughes v. Edwards*, 9 Wheat. 489. When it is ascertained that the parties intend security for a debt, the court intervenes, and without regard to any agreement existing between them,—rather upon a general policy the parties can not contravene,—attaches, as an inseparable incident, the right of redemption upon the payment of the debt.—*Eiland v. Raiford*, 7 Ala. 724 ; *Williamson v. Culpepper*, 16 Ala. 211 ; *Locke v. Palmer*, 26 Ala. 312 ; *Skinner v. Miller*, 6 Littell, 184 ; *Willing v. Aikin*, 1 McMull. Eq. This is the well-defined legal consequence, when the fact is established, that security for a debt is what was intended, and this is the concurring intention at the time of the contract, which is to be deduced from the facts and circumstances attending the transaction.

There may be no independent evidence of the debt,—no bond, bill, or note, taken for its payment : it may rest wholly on implication from the nature, facts and circumstances of the transaction ; it is sufficient that its existence is the fair, just implication.—*Conway v. Alexander*, 7 Cranch, 218 ; *Robinson v. Farrelly*, 17 Ala. 472 ; *Locke v. Palmer*, 26 Ala. 312 ; *Russell v. Southard*, 12 How. 139. Indeed, when the purpose of the creditor is to avoid the appearance of a mortgage, it is not to be expected that he would defeat it by the introduction of an express covenant for the payment of the debt, or any other independent security, disclosing its existence. In the numerous cases of this character, which have been

before this court, there was no other evidence of the debt, than an absence in the conveyance of any words showing that it rested in the mere option of the grantor, whether he would perform the condition, and the inferences from the nature, facts and circumstances of the transaction. There can be no doubt, that the absence of independent evidence of the debt is a circumstance favoring an absolute or conditional sale, or other contract, in which it is optionary whether there shall or shall not be payment. It is but a circumstance, dependent for its weight upon other facts and circumstances, with which it may be connected.—*Conway v. Alexander, supra; Russell v. Southard, supra; Brown v. Dewey,* 1 Sandf. Ch. 56. Though there is no express promise to pay, yet, when from all the facts and circumstances it is fairly collected that the relation of debtor and creditor exists, and the amount which ought to be paid is ascertained, the law implies the promise, and an action of *assumpsit* will lie *(Russell v. Southard, supra,* and authorities cited on page 152); thus affording the creditor, in all events, security, and a remedy for the debt.

While a loan, or a debt, usually attends a mortgage, and the existence of either remaining of personal obligation, notwithstanding the conveyance, is usually decisive that the transaction is a mortgage, it is not to be understood that a remedy against the person of the debtor is an indispensable ingredient of a mortgage. There are numerous cases in which the transaction was adjudged a mortgage, in which there was an absence of this feature of personal liability. *Brown v. Dewey,* 1 Sandf. Ch. 71. In the view we take of this case, it is not necessary to pursue further a consideration of that question.

It is not necessary to consider the character of the contract which, of itself, the lease may import. The important inquiry is, if that form of contract was not adopted to secure the payment of money loaned or advanced to the appellee by the appellant; and that inquiry is to be determined by considering the contract, the relations of the parties, and all the attending circumstances. There is no stipulation of the lease inconsistent with, or illy adapted to security for a loan or debt. One of the avowed objects of the association, expressed in the articles of incorporation, is the lending of money to members of the association, for building purposes, *to be secured by lien on the land and buildings.* It was in pursuance to this object the parties contracted, as is evident from all the circumstances. In the exercise of a privilege assured to members of the association, the appellee, having notice that the association had funds to invest,

[Mobile Building and Loan Association v. Robertson.]

made application for a loan, or advance, to purchase the premises. The article of incorporation, to which we have referred, it is apparent contemplates a loan,— an advance,— the creation of a debt, by the shareholder, to the association, and no more than security for the debt; the security in the form of a *lien* on the land and buildings the money is loaned or advanced to purchase, or to improve. *Lien* is a term of very large and comprehensive signification, but it never imports more than security. At common law, it imported a right to retain possession of property, until a demand was satisfied. Now it is of more extended signification, and designates all the various charges on land or personalty created by contract, or by law. Thus we have, in common use, the lien of a judgment ; the lien on lands of a vendor ; the lien of a mortgage. And whenever it is employed, it carries with it the idea of a right to remove it, by satisfying the charge or demand it is intended to secure. *Donald v. Hewitt*, 33 Ala. 534.

Keeping in view the object of the association as it is expressed in the article of incorporation, we find the present transaction originating in negotiations for a loan, to enable the appellee to consummate a contract for the purchase of the premises, and that all the negotiations for the purchase had been conducted by him. And that he should become the owner of the lands, on reimbursing the association the money loaned or advanced, is a prominent feature of the contract, and the subject of express stipulation. As he made payments of the loan, the rent diminished, as did the insurance, that being limited to a sum sufficient only for the protection of the association against the loss of any part of the principal sum loaned. Taking all the facts and circumstances of the transaction into consideration, we cannot resist the conclusion that the parties contemplated and intended no more than security to the association for the money loaned or advanced; and that being the intention, they stand in the relation of mortgagor and mortgagee. It may be, and is probably true, that they did not suppose it was a mortgage interest they were creating; but, upon its own principles, founded on a general policy in reference to contracts of this species, that is the conclusion of a court of equity.

The stipulation for the payment of rent was intended as compensation for the use of the money loaned. It is the only compensation contemplated, and the only compensation that, according to the contract, the borrower was bound to make. It is in excess of lawful interest, and is usurious. Whatever color or disguise ingenuity may throw over a loan

for illegal interest, the courts are bound to disregard, or the statute against usury will be practically abrogated.—*Evans v. Negley*, 13 Serg. & R. 218; *Miller v. Bates*, 35 Ala. 570.

We find no error in the decree of the chancellor, and it must be affirmed.