## McNEILL *vs.* NORSWORTHY.

[BILL IN EQUITY FOR REFORMATION OF ABSOLUTE DEED AS MORTGAGE.]

1. *Reformation of absolute deed, as conditional deed or mortgage.*—Where the question is, whether a contract was an absolute sale or a mortgage, the party who asserts that it was a mortgage, must affirmatively prove that, as understood by both parties at the time, the transaction was intended as a mere security for the re-payment of money; but, where the question is, whether the contract was a conditional sale or a mortgage, and it is doubtful which of the two was intended, a court of equity will construe it to be a mortgage.

APPEAL from the Chancery Court at Troy.
Heard before the Hon. M. J. SAFFOLD.

THE bill in this case was filed, on the 23d March, 1859, by John A. McNeill, against Pressley Norsworthy. Its principal object was, to have a deed for certain lands, which was absolute on its face, established as a mortgage; and it also prayed a redemption of the lands under the mortgage when established, an injunction of an action at law instituted for their recovery, an account, and general relief. The deed sought to be reformed, was executed by the complainant and his wife; was dated the 7th September, 1855; recited, as its consideration, the present payment of four hundred and twenty-five dollars; conveyed to the defendant a tract of land containing two hundred and forty acres, and contained the usual covenants of warranty. The bill alleged, that this deed was executed solely for the purpose of securing to the defendant the re-payment of three hundred and sixty-five dollars, loaned and advanced by him to the complainant on the 7th September, 1855, with sixty dollars usurious interest thereon; that this money was borrowed by the complainant for the purpose of enabling him to redeem the lands, which had been sold under execution against him nearly two years before that time; and that at the same time the deed was executed, and as a part of the same transaction, the

defendant executed to the complainant an. instrument, which was made an exhibit to the bill, and of which the following is a copy :

: " State of Alabama, ⎰ Know all men, by these pres-
  Pike County.  ⎱ ents, that I, Pressley Norsworthy,
of the county and State aforesaid, do promise and agree, if the said John A. McNeill shall well and truly pay unto the said Pressley Norsworthy, his heirs, executors, administrators, or assigns, on or before the first day of January next, (1856,) the sum of four hundred and twenty-five dollars, then the said Pressley Norsworthy, his heirs, executors, or assigns, shall well and truly make a good and lawful title unto the north-west quarter," &c., describing the lands conveyed by the deed. " This title is to be made unto the said John A. McNeill, his heirs, or assigns, provided the said John A. McNeill, his heirs, or assigns, shall pay unto the said Pressley Norsworthy, his heirs, or assigns, the said sum of money above mentioned. But, if the said sum of four hundred and twenty-five dollars is not paid, the above obligation is null and void, and of no effect. But, if the said sum of money is paid to the said Pressley Norsworthy by the time above *specyfied*, the above obligations shall be *complyed* with, but not otherwise. This 7th September, A. D. 1865." *.

(Signed by the defendant, and attested by two witnesses.)

The bill alleged, that this instrument was written by the defendant himself, who was a justice of the peace, and well versed in legal matters; that it was expressly agreed and understood between the parties, at the time the contract was consummated, that the complainant's right to redeem the lands was not to be forfeited by his failure to make punctual payment of the money at the time specified ; that he did offer to repay the money, with lawful interest thereon, after the 1st January, 1856 ; and that the defendant refused to receive it, because it was not made in time, refused to re-convey the lands, denied the complainant's right of redemption, and instituted two actions at law against the complainant, one for the recovery of the lands, and the other for the value of their use and occupation after the

1st January, 1856. The bill prayed a redemption of the lands, an injunction of the actions at law, an account, and general relief, and contained an offer to pay whatever amount might be found due to the defendant on statement of the account.

The defendant, in his answer, denied all the material allegations of the bill, as to the nature and character of the contract between him and the complainant, and averred the facts to be as follows : that he asked the complainant, some time before the contract between them was made, whether he did not intend to redeem his lands; that the complainant replied, that he did not have the money to redeem, and did not know, if he had it, that he would use it for that purpose, as the lands were sold for nearly their full value ; that the complainant, nevertheless, some time afterwards applied to him for a loan of money, to enable him to redeem the lands, and for some other purpose not recollected by respondent, and offered, if respondent would loan him the money, or procure it for him, to make to respondent an absolute deed to the lands ; that respondent accepted this proposition, and borrowed the money for complainant from a neighbor " at sixteen or twenty per cent. interest, which he certainly would not have done, if he had not been getting an absolute conveyance ;" that he advanced the borrowed money to the complainant, who thereupon executed to him the deed for the land ; that *after the consummation of the contract,* the complainant seeming to be dissatisfied, and to think that the land was worth more than he had received for it, the respondent agreed to give him an opportunity to re-purchase it, within a reasonable time, and thereupon executed to him the obligation which was made an exhibit to the original bill; that this obligation was not a part of the original contract, and was without consideration ; that the complainant failed to comply with the stipulations contained in the obligation, and agreed to pay rent for the premises, &c.

On final hearing, on pleadings and proof, the chancellor dismissed the bill ; and his decree is now assigned as error.

J. N. ARRINGTON, for appellant.

GOLDTHWAITE, RICE & SEMPLE, *contra.*

R. W. WALKER, J.—Where a conveyance is absolute on its face, and the question is, whether the transaction was an absolute sale or a mortgage, the party who claims that it was a mortgage must prove, either by the admission of the answer, or by clear and convincing evidence, that the original transaction was at the time intended and understood by both parties as a mere security for the re-payment of money.—*Seawell v. Price's Adm'r*, 32 Ala. 97. But, where it is shown that the transaction was not an absolute, unconditional sale, but was either a conditional sale or a mortgage, and it is doubtful which of the two it in fact was, equity will construe it to be a mortgage.—*Crews v. Threadgill*, 35 Ala. 334; *Locke v. Palmer*, 26 Ala. 312; *Parish v. Gates*, 29 Ala. 254; *Turnipseed v. Cunningham*, 16 Ala. 501; *Secrest v. Turner*, 2 J. J. Marsh. 471; *Russell v. Southard*, 12 Howard, 139; *Davis v. Stonestreet*, 4 Ind. 101.

It is not pretended that this was an unconditional sale; but the controversy is, whether it was a mortgage, or a sale with a right to re-purchase.

McNeill's land had been sold at sheriff's sale, and purchased by Townsend. The two years having nearly expired since the execution sale, and the land being worth more than the amount required for its redemption, McNeill applied to Norsworthy for the money necessary to redeem it. Thus it will be seen the transaction had its origin in a proposition for a loan. In addition to this, the amount advanced or paid was about two-thirds of the value of the property, and the vendor remained in possession. All these are regarded by the courts as circumstances tending to show that a mortgage rather than a conditional sale was intended. If it be admitted that the declarations of the complainant, as testified to by a single witness, are sufficient to show that he remained in possession (after 1st January, 1856) under a contract of renting with the defendant, it is perhaps a complete answer to this to say, that the complainant must have entered into such a contract under a mistake as to his legal rights, and that he ought not to be prejudiced thereby in a court of equity. The complainant charges that the land was conveyed as security for the payment of $365, with usurious interest. The evidence in

the case is very meagre, but there are some circumstances which tend to support this allegation.   It is clearly proved that the  amount advanced by the defendant was but $365, whereas the deed to Norsworthy  states the consideration paid as $425.   If the transaction was in fact  a sale of the land for $365, with the right to re-purchase by the 1st January for $425, it is difficult to understand why the matter was not truly set  forth in the writings.   Why was not the real consideration expressed in the deed?—and  why was the larger consideration recited, unless for the purpose of evading the law against usury ?   The witness Scarborough, who testifies to the  conversation between the parties on the 1st January, 1856, states that, " from the talk between the parties there had been a trade, and the money was *then due.*"   Again, " Nothing was said about paying for the land, except that the time had arrived when McNeill *was to pay the money back* to Norsworthy and redeem the land." The witness Turner, who received the money ($365) from Norsworthy and paid it  to McNeill, says, " the money was paid to McNeill to redeem the land from Townsend." And in another  part of his deposition, he says, " the amount that McNeill got from Norsworthy was $365.   McNeill was to *pay back for it* $425."   This  evidence certainly tends to show that the object was  a  loan, and  that the conveyance was given  to secure its re-payment.   The circumstances attending the transaction at least make it doubtful whether it should be deemed a mortgage or a conditional sale; and that being so, a  court of equity will construe it to be a mortgage.—Authorities *supra.*  See, further, 3d Lead. Cases Eq. (edit. 1859,) pp. 627–8, 630, 638–9, 642; *Babcock v. Wyman,* 19 How. 289; *Miller v. Thomas,* 14 Ill. 428; *Steele v. Black,* 3 Jones' Eq. 427; *Brant v. Robertson,* 16 Mo. 129.

Decree reversed, and cause remanded.