# Logwood *v.* Hussey.

*Statutory Action of Detinue for Horses, Mules, &c.*

1. *Conveyance of wife's statutory separate estate.*—Under the statute authorizing the sale and conveyance of property, belonging to the statutory separate estate of the wife, by the joint deed of husband and wife "attested by two witnesses" (Code of 1876, § 2707), it is not necessary that the two witnesses should subscribe their names in the presence of each other, nor that they should both be present when the deed is signed by the grantors.

2. *Contract held conditional sale, and not mortgage.*—An instrument of writing, in form a deed of bargain and sale, conveying personal property by absolute words of conveyance, but reserving to the grantor "the right to redeem the property" by a specified day, and containing a stipulation on his part, in the event of his failure to redeem, that he would pay a certain sum for the use of the property in the meantime,—is a conditional sale, and not a mortgage; when it is shown, also, that the recited consideration was paid, at the request of the grantor, in satisfaction of a debt which he owed to a third person, who held a mortgage on the property to secure it, and that there was no great disproportion between the value of the property and the sum so paid.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. W. B. WOOD.

This action was brought by Elijah M. Hussey, against John E. Logwood and his wife, Mrs. Hettie B. Logwood, to recover one horse, nine mules, and two hundred bushels of wheat, together with the value of the hire or use of said property during its detention; and was commenced on the 17th January, 1876. The plaintiff claimed the property under a conveyance from the defendants, which was in the following words:

" Know all men by these presents, that we, Hettie B. Logwood and John E. Logwood, for and in consideration of the sum of $676.44 to us in hand paid, the receipt whereof is hereby acknowledged, do bargain, sell, alien, and convey, to Elijah M. Hussey, executor of the estate of James M. Lane, the following property, to-wit,"—describing the horse and the mules as they were described in the complaint; " also, one ox-wagon; also, fifty acres of wheat which we have sown

(27)

[Logwood v. Hussey.]

upon the lands rented from James M. Lane in his life-time, and agree to deliver to him, the said Hussey, ready cleaned, less toll. And the said Logwood and wife have the right to redeem the said property by the first day of January, 1876, by paying the first above-mentioned sum, with interest; and it is further understood said property can not be redeemed until the rent due the estate of James M. Lane, for the year 1875, is paid, and then the debt above specified, with interest aforesaid; and if we shall fail, by the first day of January, 1876, to redeem said property, we agree to pay for the use of said above-mentioned [property?] the sum of $54.

"Test: *James A. Barksdale*,　　"John E. Logwood,
"*Lizzie D. McDonald*,　　"Hettie B. Logwood."

The defendants pleaded the general issue, "in short by consent, with leave to give in evidence any matter proper to be pleaded in bar of plaintiff's recovery;" and issue was joined on this plea. Mrs. Logwood also filed several special pleas,—the first averring her coverture; the second, that she was a married woman when she signed "the said pretended mortgage which is the foundation of this suit," and that the said instrument was null and void as to her, and as to her statutory separate property conveyed by it, because it was given to secure a debt due from her husband to the plaintiff; and the third, that the property sued for, except the two hundred bushels of wheat, belonged to her statutory separate estate under the laws of Alabama, and could not be lawfully mortgaged or conveyed by her and her husband in satisfaction of her husband's debt, as by said instrument they pretended to do. The court sustained a demurrer to the first special plea, but overruled the plaintiff's demurrers to the others; and issue was then joined on them.

On the trial, as the bill of exceptions states, the plaintiff offered in evidence the deed above copied, and introduced said Barksdale, one of the subscribing witnesses, "who testified, that he and said John E. Logwood and his wife signed said writing in each other's presence, at the residence of said Logwood and wife, but that Lizzie D. McDonald, the other subscribing witness, was not in the room when he and said Logwood and wife signed said writing, and did not sign it in his presence." The plaintiff then introduced as a witness, "for that purpose alone, said John E. Logwood, who testified, that the signature of said Lizzie D. McDonald was in her handwriting." On this evidence, Mrs. Logwood moved the court to exclude the said conveyance from the jury; but the court overruled the objection and motion, and allowed the conveyance to be read to the jury; to which she reserved an exception. The plaintiff proved, also, a demand and re-

fusal before suit brought, and the defendants' possession of the property at the commencement of the suit. On the part of the defendants, said John E. Logwood was then introduced as a witness, " and testified, that the property sued for was a part of his wife's statutory separate estate. Being asked to state the consideration of said writing, he testified that, in the year 1874, he and his wife had made an account at the store of George Mason & Co. in the town of Athens, in said county, amounting to $677.44, and, to secure the payment thereof, had executed to said Mason & Co. their joint notes, with a mortgage on the stock here sued for ; that some of said account was for family supplies, and some for plantation supplies, and most of it was used for the latter purpose ; that said notes and mortgage fell due on the 1st January, 1875, and said Mason & Co. then demanded payment, or the delivery of the said stock to them ; that he, at this juncture, in the name and interest of himself and wife, applied to the plaintiff, and, with the assistance of Luke Pryor, esq., succeeded in getting him to pay off said account, and accept the said writing,—which he did ; that plaintiff had no communication about the matter with Mrs. Logwood, but witness attended to the execution of the writing, and presented it signed and attested as it now stands ; and that on it the plaintiff discharged the said indebtedness." The witness further testified, that he and his wife were married in the year 1861, and that all her property was derived by gift from her father, Jonathan McDonald ; and he was examined at considerable length as to the various uses to which he had applied her money, his investments from time to time, changes of residence, style of living, &c.

The plaintiff then offered in evidence the said mortgage to Mason & Co., with the notes it was given to secure, and the accounts for which the notes were given ; and the court admitted them, against the objection of Mrs. Logwood ; to which ruling, also, she reserved an exception. The word "*paid*" was written across the face of one of the notes, with the name of Mason & Co. written underneath it. In reference to these notes and the mortgage to Mason & Co., Fred. Sloss, a member of said firm, who was afterwards introduced as a witness by the plaintiff, testified, "that the items in said account were furnished to said John E. Logwood and wife, and were mostly, if not entirely, bought by the former ; that the prices are reasonable, usual, and fair ; that said account was paid by the plaintiff ; that some of said account was for family supplies, and some of it was for plantation supplies ; that he probably consulted his attorney, before opening said account, as to what articles Mrs. Logwood's separate estate

would be liable for; that said notes and mortgage were exe-cuted by said Logwood and wife jointly; and that his firm, when plaintiff settled said account, was in the act of sending for and taking charge of said stock." The plaintiff himself testified, on cross-examination, " that Mrs. Logwood was not present when he made the said trade with her husband; that the whole transaction was made with him; that he took the writing, or bill of sale, had it executed, and returned it to witness as it now stands; and that he, witness, never had any conversation with Mrs. Logwood on the subject." This was all the evidence in reference to the circumstances under which the said conveyance, or bill of sale to the plaintiff, was executed. Mrs. Logwood objected to the evidence "go-ing to show that said writing, or bill of sale to the plaintiff, was given in consideration of his paying off said account;" and reserved an exception to the overruling of her objec-tion.

As to the value of the mules, there was some difference in the estimates of the several witnesses. John E. Logwood testified, that their average value was $150 each, and the value of their annual hire $25 each. E. R. Raney, a witness for the defendants, said that they were worth about $125 each at the commencement of the suit; and one Lindsey, another witness for the defendants, estimated their value at $100 each, and thought they would bring $35 each at public sale. The plaintiff's witnesses, who had possession of the mules, under contracts of hiring, during the suit, estimated their value at from $40 to $70 each, and their annual hire at $15 each.

This being the substance of all the evidence, as set out at greater length in the bill of exceptions, the court charged the jury, that the conveyance under which the plaintiff claimed the property "was an absolute bill of sale, subject to the condition therein expressed; that if the parties mak-ing the conveyance failed to comply with the conditions therein prescribed at the time mentioned, then the deed be-came absolute; and that it was a question of fact for the jury to determine, whether the parties had complied with the conditions, or had failed or refused to do so." There was no exception to this charge. The court gave also several other charges in writing, of which, to the 4th, 5th, 6th, 7th, and 10th, exceptions were reserved by Mrs. Logwood. These charges were in the following words:

"4. The husband is entitled to the rents, income, or profits of the wife's statutory separate estate, and is not required to account with her, her heirs, or representatives, for them; and he may use them, or invest them for himself, if he

VOL. LX.

chooses; or he may give them to his wife, in the same manner as he may give any other property. But, if she claims them as a gift from her husband, she must show by proof that he had divested himself of the title, and invested it in her: he must abandon his right and title to it, and transfer it to her, by such words, acts, or writing, as will clearly show that the title had passed away from him to her.

"5. If the jury believe, from the evidence, that John E. Logwood acquired the property sued for, or any portion of it, with his own money or labor, or by the rents, income, or profits of his wife's separate estate, and held it as his own; then it became his own personal property, and is liable for his debts and contracts, and the sale of it to the plaintiff passed a good title, and entitles him to recover.

"6. If the jury believe, from the evidence, that the account which the defendants were owing to Mason & Co., and to secure which they had given Mason & Co. a mortgage on this property, was for articles of comfort and support of the household, suitable to the degree and condition of the family, and for which the husband would be liable at common law; and that the plaintiff, at the request of defendants, paid said account for them, and, in consideration of the payment of said account, they executed to him the said bill of sale for the property sued for; then the contract was legal, and binding on Mrs. Logwood, and on her statutory separate estate, so far as conveyed by said bill of sale, and the plaintiff is entitled to recover.

"7. But, if the jury should find that the account due Mason & Co. was not for articles of comfort and support of the household, suitable to the degree and condition of the family, but that it was the personal debt of said John E. Logwood, and payment of said debt of her husband was the consideration of the sale of her property; then her statutory separate estate was not liable for, and could not be sold to pay her husband's debt; and if any part of the property in the bill of sale was her statutory estate, said bill of sale was void as to it, and the plaintiff can not recover it."

"10. If the jury find, from the evidence, that John E. Logwood had made a gift of the rents, income, or profits of his wife's separate estate, to her, in such manner as divested him of the right and title to them, and invested it in her, and that this gift was made before the debt to Mason & Co. was incurred, which was paid off for him by the plaintiff; then the said rents and profits so given became a part of her statutory separate estate, and could not be sold by her, unless for the payment of a debt for articles of comfort and support of the household, suitable to the degree and condi-

tion in life of the family, and for which the husband would be liable at common law; and if the jury find that the property sued for was bought with the proceeds of her separate estate received from her father, or with the rents and profits which her husband had given her, in the manner as before stated; then the sale of said property conveyed no title to the plaintiff, unless it was in payment of articles of comfort and support, as before stated."

Mrs. Logwood requested the court, in writing, to charge the jury—1st, "that if, from the evidence, they find that any of the articles were for the exclusive use of the husband, or for negroes on his farm, and not of the household, and not for the family in a collective capacity, they must find for the defendants;" 2d, "that one who advances money to the husband, to pay an account for necessary supplies, does not thereby clothe himself with the rights of the original creditor." The court refused each of these charges, and exceptions were reserved to their refusal.

The rulings of the court on the pleadings and evidence, and in the charges given and refused, are now assigned as error by Mrs. Logwood.

J. B. McDONALD, with whom were L. P. WALKER and JNO. N. MALONE, for appellant.—1. The deed of husband and wife, conveying the wife's statutory separate estate, if not acknowledged by them, must be attested by two witnesses. Code of 1876, § 2707. To constitute an attestation by a witness, he must be present when the grantor executes the instrument, must be called on to attest it, and must then subscribe his name as a witness.—See the definition of the word *attest*, in 1 Burrill's Law Dic. 112; 1 Bouv. Law Dic. 147; 3 Camp. 232; 9 Mees. & W. 404. The statute is enabling, and must be strictly complied with.— *Warfield v. Ravisies*, 38 Ala. 318; *O'Neal v. Robinson*, 45 Ala. 531; *Hendon v. White*, 52 Ala. 597, and authorities there cited. The same language used in this statute—"attested by two witnesses"—is also used in section 2161, in reference to conveyances of real property by married women; and in section 2160, which relates to conveyances admitted to record on proof; while the preceding section (2159), which gives the form for the probate of conveyances, requires the witness to swear, "that he attested the same in the presence of the grantor, and of the other witness, and that such other witness subscribed his name as a witness in his presence." All these sections, being *in pari materia*, are to be construed together, and the same words must receive the same construction in each section. The prescribed form of probate shows, conclusively,

[Logwood v. Hussey.]

the sense in which the words were used by the legislature, and would have rendered the probate of this instrument impossible.

2. The instrument is a mortgage, and not a conditional sale. It has all the *indicia* of a mortgage : it has a redemption clause, and a law-day ; the relation of debtor and creditor existed between the parties ; the value of the property was nearly double the amount paid by plaintiff; and the possession remained with the vendor, under a contract of hire.—*Turnipseed v. Cunningham,* 16 Ala. 506 ; *Crews v. Threadgill,* 35 Ala. 334 ; *Locke v. Palmer,* 26 Ala. 312 ; *Flagg v. Mann,* 2 Sumner, 486.

3. The law renders the wife's statutory separate estate liable for necessaries, and prescribes the manner in which that liability shall be enforced ; but there is no authority given to her or her husband, or to both jointly, to mortgage it for their debts or contracts, even for necessaries. The account of Mason & Co. embraced many articles for which Mrs. Logwood's estate was not liable, and they could not have enforced their mortgage against her. But the plaintiff does not even occupy the position of Mason & Co.: he stands simply as a creditor, who has paid the husband's debt, at the husband's request, and taken a mortgage on the wife's property as security.—*Riley v. Pierce,* 50 Ala. 93 ; *Fry v. Hamner,* 50 Ala. 52.

L. PRYOR, and R. A.McLELLAN, *contra,* cited *Jones v. Wilson,* at the last term ; *Peebles v. Stalla,* at the last term ; *Haynie v. Robertson,* at the present term ; 2 Bishop on Married Women, 254-280 ; 1 Hilliard on Mortgages, 81-96, 514, 520 ; *West v. Hendrix,* 28 Ala. 226.

STONE, J.—Section 2707 of the Code of 1876 declares, that "the property of the wife, or any part thereof, may be sold by the husband and wife, and conveyed by them jointly, by instrument of writing attested by two witnesses." The testimony tends to show, that the deed offered in evidence by plaintiff was not attested by the two witnesses in the presence of each other, but that the female attesting witness was not present when the grantors signed their names. Her hand-writing to the attestation is proved. The other witness testified, that he saw the grantors· sign their names, and signed his name as a witness in their presence. It is contended, that this is not a sufficient attestation, within the statute above copied. The grantor, John E. Logwood, being introduced for the purpose, testified that the signature of Miss McDonald, as a subscribing witness, is in her proper

hand-writing. No proof was offered, by him or any one else, of the circumstances under which she signed her name. We think the state of the record justifies us in inferring that, after the deed was signed by the grantors, in the presence of, and attested by Barksdale as a witness, the grantors appeared before Miss McDonald, and requested her to sign it also as a witness, that it might conform to the statute requiring two attesting witnesses ; and that, thereupon, she did so sign it.

Our statutes in regard to the attestation of wills are not materially different from that copied above in reference to conveyances by husband and wife, of the wife's statutory separate estate. The former statute was, that wills of realty must be "attested by three or more respectable witnesses, subscribing their names thereto in the presence of such devisor."—Clay's Dig. 596, § 1. The language of the Code is, "attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator."—Code of 1876, § 2294. In *Hoffman v. Hoffman*, 26 Ala. 535, and in *Woodcock v. McDonald*, 30 Ala. 411, the witnesses did not sign in the presence of each other, nor did they all see the testator sign the will. Each of the wills was held to be properly executed. In the former of those cases, speaking of witnesses attesting in the presence of each other, it was said: "The statute does not require this, in terms ; and although some of the earlier cases seem to have thought it necessary, under the statute of Car. 2, c. 3, the language of which is, in this respect, almost identical with our own, the contrary was expressly ruled in *Smith v. Cadron*, 2 Vesey, Sr., 455, which decision has been followed, both in England and the United States." We think this deed was sufficiently proved to go to the jury.

2. There is nothing in the present record that justifies the conclusion, or inference, that Hussey purchased from Mason & Co. the debts or mortgages on Logwood and wife. The testimony of Logwood himself is, that Hussey paid the debt; and one of the notes secured by the mortgage is marked "*paid,*" across its face. Neither is there any evidence that Hussey retained any debt on Logwood ; but, on the contrary, it is manifest that neither Logwood nor Mrs. Logwood was under any legal obligation to repay to Hussey the money he paid to Mason & Co. for them. They reserved but a privilege to repossess themselves of the title to the property, but made no promise to do so. The only promise made was, to pay hire for the property, in the event they did not repay to Hussey the money advanced by him, with interest. This transaction was not a mortgage, but a sale to Hussey, with

a privilege reserved to repurchase; a sale, upon a consideration paid in money, and without evidence that the agreed price was disproportionate to the value. The case is brought directly within the rule declared in *Peeples v. Stalla*, and *Haynie v. Robertson*, at the present term. It is not necessary to repeat the argument on which those cases rest.—See, also, *McKinstry v. Conly*, 12 Ala. 678. Having arrived at the conclusion that the present transaction was a sale with condition to repurchase, it follows that the sale, admitting the property sold to have been the statutory separate estate of Mrs. Logwood, was valid and binding.—See *Peeples v. Stalla*, *supra*.

We deem it unnecessary to consider in detail the various questions reserved in the trial of this cause. In none of them do we find any errors prejudical to appellant. A few of them are, perhaps, a little too favorable to her; but on the questions of merit, we fully approve the rulings of the Circuit Court, and its judgment is affirmed.