# Reeves v. Abercrombie.

*Bill in Equity to Declare a Deed Absolute on its Face to be a Mortgage.*

1. *Declaring absolute deed to be a mortgage—Evidence.*—To authorize the court to declare a deed absolute on its face to be a mortgage, it

[Reeves v. Abercrombie.]

is not sufficient; to raise merely a doubt whether the instrument speaks the intention of the parties. The court must be satisfied by at least a clear preponderance of the evidence that a mortgage, and not an absolute sale was intended and clearly understood by the grantee as well as by the grantor.

2. *Same.*—This severe rule does not apply in cases where the writings express a conditional sale, or where it is admitted that there was a contemporaneous agreement different from that expressed in the instrument.

3. *Same.*—It is impossible to lay down any fixed rule by which it can be ascertained with mathematical accuracy whether, in a given case, clear and convincing proof has been adduced. But it is absolutely certain that if there is no continuing debt, there can be no mortgage.

4. *Same—Inference from silence.*—Where one party has begun proceedings against the other, his failure to reply to a letter from the latter making demands in reference to the property in controversy, cannot be fairly construed as an admission of the truthfulness of the assertions of facts contained in the letter.

5. *Measure of proof—Difference in cases to declare conditional sale to be a mortgage, and absolute sale a mortgage.*—Less stringent rules, as to the measure of proof, prevail in cases to declare conditional sales to be mortgages than in cases to declare absolute deeds to be mortgages.

APPEAL from Montgomery City Court.
HEARD before Hon. T. M. ARRINGTON.
The facts are stated in the opinion.

JNO. G. FINLEY and THOS. H. WATTS, for appellant. The failure on part of Abecrombie to deny the assertions of fact contained in the letter received by her from Reeves, amounts to an admission of the truth thereof.— *Watson v. Byers,* 6 Ala. 393; *Perry v. Johnston,* 59 Ala. 651. The evidence showed a mortgage, and appellant had a right to redeem.—*Hodges v. Thompson,* 13 So. Rep. 679; *Hughes v. McKenzie,* 101 Ala. 415 *Illges v. Ingram,* 98 Ala. 511; *Ashurst v. Peck,* 101 Ala. 506; *Bates v. Kelly,* 80 Ala. 142; *McMillan v. Jewett,* 85 Ala. 476; *Moseley v. Moseley,* 86 Ala. 289; *Parmer v. Parmer,* 88 Ala. 545.

LOMAX & LIGON *contra.*—Before a deed absolute on its face will be declared a mortgage, the proof that such was the clear intention of the parties must be clear, consistent, strong, stringent and convincing.—*Douglas v. Moody,*

[Reeves v. Abercrombie.]

80 Ala. 66 ; *Parks v. Parks*, 66 Ala. 326 ; *Bishop v. Bishop*, 13 Ala. 487 ; *Brantley v. West*, 27 Ala. 542 ; *West v. Hendrix*, 28 Ala. 234 ; 97 U. S. 624.

HEAD, J.—Stephen Reeves, who was complainant in the lower court, and who appeals from a decree dismissing his bill, executed to the defendant, in April, 1886, an absolute conveyance, with covenants of warranty, of a certain lot in the city of Montgomery, upon which were located several houses. The grantor resided in one of them and he continued to occupy it, under a contract of rental, and to pay rent therefor to the grantee, for more than six years. A controversy having arisen between them as to the real object and purpose of the conveyance, she brought an action of unlawful detainer against him in October, 1892, whereupon he filed his bill to have said deed declared a mortgage, and for an account of the rents, and redemption. The case involves no new or difficult principles of law and the whole controversy is one of fact : the pleadings squarely presenting the issue between the parties, whether the deed was what it purports to be—the evidence of an absolute sale of the property—or whether it was designed by both parties to operate as a mortgage to secure a debt. The measure of proof -required in such. cases is well understood. The burden is upon the complainant to establish the averments of his bill by ''clear and convincing'' or, as has been otherwise expressed, by ''strong and stringent evidence.'' ''It is not sufficient to raise a suspicion or doubt as to whether the instrument, which the parties have adopted as the evidence of their agreement, correctly states the contract. The court must be satisfied by at least a clear preponderance of proof that a mortgage, and not an absolute sale was intended.—*Brantley v. West*, 27 Ala. 542. Such must have been the clear and certain intention and understanding of the grantee as well as of the grantor. *West v. Hendrix*, 28 Ala. 226 ; *Adams v. Pilcher*, 92 Ala. 474. No more striking proof of the steady adherence by this court to these rules can be afforded than a reference to the numerous cases, in which complainants have failed to secure favorable decrees upon bills filed to have absolute conveyances declared to be mortgages.—*Ingram v. Illges*, 98 Ala. 511 ; *Adams v. Pilcher*, 92 Ala. 474 ;

[Reeves v. Abercrombie.]

*Downing v. Woodstock Iron Co.*, 93 Ala. 262; *Vincent v. Walker*, 86 Ala. 333; *Kraus v. Dreher*, 84 Ala. 319; *Perdue v. Bell*, 83 Ala. 396; *Douglass v. Moody*, 80 Ala. 61; *Mitchell v. Wellman*, 80 Ala. 16; *Logwood v. Hussey*, 60 Ala. 417; *Haynie v. Robertson*, 58 Ala. 37; *Peeples v. Stolla*, 57 Ala. 53; *Phillips v. Croft*, 42 Ala. 477; *Swift v. Swift*, 36 Ala. 147; *Pearson v. Seay*, 35 Ala. 612; *Sewell v. Price*, 32 Ala. 97; *Harris v. Miller*, 30 Ala. 221; *West v. Hendrix*, 28 Ala. 226; *Brantley v. West*, 27 Ala. 542; *Bryan v. Cowart*, 21 Ala. 92; *Chapman v. Hughes*, 14 Ala. 218; *Freeman v. Baldwin*, 13 Ala. 239; *McKinstry v. Conly*, 12 Ala. 678; *Eiland v. Redford*, 7 Ala. 724.

When the writings, in one or separate instruments, express a conditional sale, the courts incline to construe the instrument or instruments to be a mortgage, where parol evidence is introduced tending to show a mortgage was designed; or, if it be admitted there was a contemporaneous agreement different from that expressed in the writings, such admission will have an important bearing in the weighing the parol evidence, tending to show the absolute conveyance was intended as a mortgage.—*Peagler v. Stabler*, 91 Ala. 308; *Daniels v. Lowery*, 92 Ala. 519. In such cases the severe rule as to the measure of proof does not prevail. This principle, however, has no application in this case and we must here apply the strict rule, since there is neither writing nor admission, that a conditional sale, or sale with a right of re-purchase was the actual character of the transaction. It was either an absolute sale of the property, in consideration of a sum of money, furnished by the defendant for the discharge of debts due by the complainant to third persons, or it was a mortgage, to secure the amount so advanced, with a shifting of the debts from the mortgage creditors to the defendant, by way of substitution. The offer to redeem and the rejection thereof, which usually form the preliminary movements, in anticipation of a legal controversy like this, betoken that the one party is prepared to affirm by his oath and the other to deny in the same manner the defeasible character of the instrument. Emphatic assertion and equally emphatic contradiction are, therefore, to be expected; and such we find to be the state of the present record. The testimony of the prin-

[Reeves v. Abercrombie.]

cipals to the controversy is in hopeless and confusing con-
flict.    Their respective versions of the transaction exact-
ly accord with the two theories of the case, their depo-
sitions being as different and divergent as their  plead-
ings.    The one is supported by his wife, and the  other
corroborated by  her sister,  and we may assume  these
witnesses are alike affected with the  imputation  of in-
terest and partiality.

Another element of uncertainty and  difficulty is  add-
ed, by evidence offered by the complainant of  a  casual
remark said to have been uttered by the defendant, (and
which she positively denies) ; tending· to show the  trust
character  of the conveyance, over  and  against which,
may be set the evidence of  another  witness  introduced
by the defendant, who testifies to three  alleged  conver-
sations of the complainant, (which he  protests he  never
had) , tending to show admissions  at variance with  the
position assumed in his bill and testimony.    It is when
confronted with such a  situation, ·that  one feels,  with
full  force, the wisdom  of the remark  of Chief  Justice·
Chilton in one of the cases  above cited, where he depre-
cates the relaxation of the rule against varying the effect
of  a written instrument by parol testimony, in this class
of cases ; and looking  over the litigation  such relaxation
has produced, as it appears in  our reports, it is seriously
to be doubted whether it has not produced more of  per-
jury than of justice.    The right  to  establish  by parol
the defeasible character of an  absolute  written  convey-
ance is, however, now too well fixed in  our jurisprudence
to be questioned, and where· the effort is made we  have
only to inquire,  whether  it has been  sustained by the
necessary measure of proof.    Every case  must of neces-
sity be decided upon its peculiar facts and circumstances.
It is impossible to lay down any decisive tests  and fixed
rules by which it can be ascertained, with  mathematical
accuracy, whether in any particular  case clear and  con-
vincing proof has been adduced.    The absolutely certain
thing which the cases establish is, that if there is no con-
tinuing debt to be secured, there can  be  no  mortgage ;
but in  practical operation, this  axiomatic proposition
often affords no substantial relief in solving the problem,
since the  ascertainment of the existence of  a debt is in
many instances attended with as much difficulty  as the
decision of the main question ; indeed it may be said to

[Reeves v. Abercrombie.]

be but another form of the main question itself. We have an illustration of this in the present case, where, no written evidence of indebtedness having been given or taken, the same testimony, which tends to establish that the instrument did not really state the contract, tends also to establish the continued existence of a debt; while that which tends to establish the contrary, tends also to prove the discharge of the debt complainant owed to third persons without leaving any subsisting obligation to the defendant.

The qustion at last resolves into the inquiry, whether the version of the complainant is so far sustained by other witnesses, and the facts and circumstances developed in evidence, that an impartial mind has an abiding conviction of its truth, or whether no more can be asserted than that a doubt or suspicion as to its truth has been raised up. In the former case, the complainant prevails; in the latter, or if the clear preponderance of the evidence is not on his side, he must fail.

It is helpful to ascertain whether the transaction began in an application for the loan of money; was there great disparity between the value of the property and the consideration of the conveyance; whether the grantor retained possession, paid taxes, made improvements a tenant would not probably make; or otherwise, with the knowledge and consent of the grantee, acted towards the property in a way an owner would naturally do, when his property was encumbered. The conduct of the parties under, and with reference to, any agreement made by them, throws a strong light upon their understanding of its scope and purpose, and, upon this idea, the inquiries above suggested would naturally arise in the mind of the searcher after truth, who, in the midst of conflicting statements, would probably give more heed to the actions of the parties than to their words. These circumstances are therefore important, but not necessarily controlling, although they may be deemed sufficient to turn the scale. The absence of all or most of them would be regarded as very significant in a contested case and would strongly support the theory of no mortgage. Much, of course, would depend upon the other evidence. In this, as in other cases, attention must be paid to all trustworthy evidence, and upon that the conclusion must be based. With this

[Reeves v. Abercrombie.]

much of preface, let us proceed to an analysis of the tes-
timony, in which we have been aided by able and elabo-
rate arguments of counsel, who discuss the case from
their respective standpoints with great zeal.

To narrow the field of controversy as much as possi-
ble, we will state what the practically undisputed evi-
dence establishes. At the time of the execution
of the conveyance the complainant owned the
property in question, but it was encumbered with
three mortgages aggregating about nineteen hundred
dollars. He was an undertaker and hackman, having
personal property suitable for carrying on such business,
and this was likewise covered by at least one of the mort-
gages. His creditors were pressing for payment, threat-
ening to sell his personal property, and he was unable to
meet the obligations. He had instructed real estate
agents to advertise the place for sale, and a card, with
the words ''For Sale'' thereon, had been posted upon the
premises. He and the defendant were friends and neigh-
bors, but they were not relatives, nor particularly inti-
mate, nor were they even accustomed to visit each other,
although they resided on the same street. She owned a
good deal of property but was not a money lender. She
did not have on hand the cash necessary to pay off the
mortgages, but was forced to and did borrow it on four
years time by placing an incumbrance on a piece of
property she already owned, as also upon that conveyed
to her by the complainant. The two mortgages on the
real estate, outstanding when the transaction took place,
appear in the record, having been delivered to the defen-
dant, marked paid, with the other papers. The third
mortgage is not produced and the evidence is somewhat
indefinite as to the amount of the three, but this is not
surprising after the long lapse of time. The statement
of the consideration of the deed at nineteen hundred dol-
dollars was intended to cover the aggregate amount in
round numbers, and no money was paid or agreed to be
paid to or for the grantor, except an amount necessary
to discharge his said debts, evidenced by said mortgages.
When the conveyance was executed the complainant
made no claim, nor statement either to the lawyer who
drafted the instrument or to the notary who took the ac-
knowledgment, that the trade was other than an absolute
sale. For five years before the filing of the bill the col-

lection of the rents and the letting of the houses was in the hands of a real estate agent, employed by the defendant, and he never heard any claim from the complainant during that time, that he had simply given a mortgage.

We come now to the field of controversy, contradiction and inference from proven facts and circumstances. Reeves testifies he had made repairs to the extent of several hundred dollars, but he gives no information as to what the nature and character thereof were, nor upon which of the houses; and the real estate agent mentioned, as also a carpenter who testifies he made repairs at the instance of the defendant, both say they know of no repairs made by him at his own expense.

The complainant and his wife swear that the trade was made at their house, whither the defendant volunteered to come, her attention having been attracted by the sign upon the house, indicating the property was for sale; that upon being informed of his financial embarrassment and of the importunities of his mortgage creditors, she offered to relieve him of his difficulties, by lending him the money necessary to pay the debts, which she stated she would borrow, by mortgaging her best piece of property, giving him an unlimited privilege of redemption, with simply an application of the rents to the reduction of the amount advanced, and the taxes and insurance which she agreed to pay. This shows a disinterestedness and liberality very remarkable under the circumstances, when it is considered, that with the most favorable collection of rents, it would, according to the calculation of his counsel, require over eight years to make the account balance, during which time her other property, called into service for his relief, would be jeopardized. These considerations stamp his version of the affair with a strong impress of improbability. On the other hand, the defendant and her sister testify that complainant repeatedly came to her house to sell the property, she having emphatically refused to make him a loan, or raise his mortgages for him, saying she was not engaged in taking up mortgages, and that the bargain was there made to buy the place outright. In this statement they are corroborated by Nicrosi, a disinterested witness, who states that the complainant told him he was willing to sell if he could find a purchaser, not wishing to have his prop-

erty sold at auction, and that the witness found a pur-
chaser, who was the defendant, and *sent him to her*. The
defendant owned another lot on the same street, and it
is not unnatural that she should have been willing to
buy another lot, with improvements in the same neigh-
borhood. Upon complainant's theory, no profit or ad-
vantage could accrue to the defendant; on the contrary
she might suffer loss. Viewed, however, as an absolute
sale the complainant obtained the release of the incum-
brance upon his hacks, hearses and horses, which might
well furnish a sufficient inducement to a parting with
his real estate. It is not unreasonable that he should
have preferred to preserve his business, when the rent of
a house to live in would be insignificant. No disparity
between the value of the property and the consideration
is satifactorily established. A real estate agent gives the
opinion that the defendant paid a full price and there is
no counter evidence upon this point except that of com-
plainant and his wife. The continued occupancy of one
of the houses, accompanied by a payment of rent, is not
such a retention of possession as would indicate the re-
tention of an equity of redemption.

The only payment of taxes which it is claimed the com-
plainant made, was for two years. One receipt produced
shows payment for 1885, the year previous to the con-
veyance, and for this he was liable. Its payments was
necessary to protect his covenant of warranty.

An agreement is produced, forgotten but not denied by
the complainant, in which he contracted to pay one-
third of the taxes for 1886. The payment of the taxes
the second year was no doubt under this contract, which
we regard as having a strong tendency in support of the
defendant's side of the controversy. When the sale was
made, just one-third of the year 1886 had expired and
the purpose of the agreement was evidently to apportion
the burden of the year's taxes between them according
to the time of their respective ownerships. If a mort-
gage, only, had been intended, no good reason can be
perceived for taking or making this written agreement,
since the complainant would then be liable ultimately
for all of the taxes. No evidence of indebtedness against
the complainant was taken or preserved, and while it
would not be necessary to do this, such omission is al-
ways regarded as significant. The only remaining evi-

dence, corroborative of the complainant's theory, is that of three witnesses, who testify to verbal statements, in recognition of the alleged defeasible character of the deed, claimed to have been made by the defendant. Loose declarations of trust and casual conversations derogatory of the grantee's title have not been regarded as possessing much probative force in cases like this, even when proven to have been made; while the unsatisfactory and unreliable character of evidence of verbal statements, easy to be misunderstood and difficult to be accurately reproduced, is everywhere recognized by those accustomed to deciding controverted questions of fact, particularly when given long after the event and without motive to impress the conversations upon the memory. Enmity or unfriendliness to the party, against whom such testimony is given, or bad character of the witness giving it, infects it with additional elements of weakness and worthlessness. We, therefore, attach no weight to the testimony of the witness, Ennis, in which she states, that two years before, she heard the defendant say she had raised a mortgage for six hundred dollars on the complainant's property, and he was to pay her ten dollars a month until he paid her back; and no importance is to be attributed to the ambiguous statement of the witness Burchett, who testified to having heard the defendant remark, eight years before, that she bought the place "for pity's sake and that if Reeves paid her back to-morrow he could take the place." Such remark is by no means inconsistent with an absolute purchase. The testimony of the witness Pinckard, who gave evidence in reference to an interview or conversation between the complainant and the defendant in his office, six years prior to his examination, is entirely too indefinite and uncertain to form any substantial basis for the belief, that she then deliberately recognized and admitted that she held only a lien or mortgage upon the property in controversy. The complainant, in her absence, applied to Pinckard to borrow money, for the purpose, as he says, of redeeming, but, as she testifies, of purchasing the property from her, she having offered to re-sell it to him. It developed she held the legal title and Pinckard sent for her to come to his office. She exhibited her deed and a disagreement or dispute there arose between these litigants upon the subject of her liability to allow him

[Reeves v. Abercrombie.]

for rents collected, which would rather prove she denied
instead of admitted his claim. The witness states the
disagreement did not make much impression on his
mind, as he soon discovered it was not a loan he cared to
make, and that he may have remarked his business was
to loan money and not buy property. This witness does
not claim to have any accurate recollection of what oc-
curred and his deposition furnishes no substantial sup-
port to the complainant's cause.

Much stress is laid by counsel for appellant upon the
omission of the defendant to reply to a letter of October
21st, 1892, written in the name of the complainant, in
which his demands were set forth, but we do not feel the
force of the argument. The letter was evidently prepared
by his attorney as preliminary to his litigation. The
controversy between them had already culminated in an
unlawful detainer suit, which sufficiently indicated her
position, and no reason appears why she should have
reiterated it. Her silence simply indicated an intention
to abide by her resolution of resistance to his efforts and
refusal of his proposition of redemption. It cannot be
fairly construed as an admission of the truthfulness of
the assertions of fact contained in the letter.

From the foregoing review of the facts, we think it
sufficiently appears that the evidence is neither clear and
convincing nor strong and stringent in support of the
complainant's cause. His case is attended at every point
with contradiction doubt, uncertainty and improbability.
After a survey of the evidence in its entirety and
in all its bearings, the mind is left rather in a state
of bewilderment, than in a condition of calm satisfac-
tion, which accompanies clear and abiding conviction of
the truthfulness of a proposition. Upon the whole case,
there is a tendency towards the belief, that the deed tru-
ly states the contract.

In most of the cases in our reports, where relief has
been granted to complainants, declaring absolute con-
veyances to have been mortgages, it is noticeable that
the controversy was, whether a conditional sale or a
mortgage was intended, in which, as we have seen, less
stringent rules as to the measure of proof prevail.
*Hughes v. McKenzie,* 101 Ala. 405; *Daniels v. Lowery,* 92
Ala. 519; *Cosby v. Buchanan,* 81 Ala. 574; *Turner v.
Wilkerson,* 72 Ala. 361, *Mobile Building & Loan Associa-*

35

[Strauss, Pritz & Co. v. Glass.]

*tion v. Robertson*, 65 Ala. 387; *McNeil v. Norsworthy*, 39 Ala. 156; *Crews v. Threadgill*, 35 Ala. 334; *Parish v. Gates*, 29 Ala. 254; *Locke v. Palmer*, 26 Ala. 312; *Turnipseed v. Cunningham*, 16 Ala. 501. In all of these, however, the case for the complainant was much stronger than it is here; and the like may be said of the four cases we have found, where relief was granted, in which the issue was presented in the same form as we here find it.—*Parks v. Parks*, 66 Ala. 327; *Bishop v. Bishop*, 13 Ala. 475; *Sledge v. Clopton*, 6 Ala. 589; *English v. Lane*, 1 Porter, 328.

We concur in the opinion of the city court that the appellant failed to establish the averments of his bill, by the measure of proof the law requires, and the decree must be affirmed.