# Williams v. Reggan.

*Bill in Equity to have an Absolute Conveyance declared a Mortgage.*

1. *Bill to declare absolute conveyance a mortgage; evidence.*—A court of equity is inclined to consider a transaction a mortgage rather than a conditional sale, and for such purpose does not require the same amount of proof as when the attempt is to declare an unconditional sale a mortgage; and a deed absolute on its face will be declared a mortgage when the evidence, as here, clearly shows that the relation of creditor and debtor existed at the time of the transaction, that it began in an application for a loan of money, that the grantor remained in possession without the payment of rent, that there was a disparity in the price paid and the value of the property, that no receipts were

given nor evidences of debt surrendered, and that a repurchase was contemplated by both parties.

2. *Same; redemption; accounting.*—The account, in such case, should be stated according to the principles which obtain in ascertaining the liability of a mortgagee in possession from whom redemption is sought.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. W. W. WILKERSON.

The bill in this case was filed by the appellant, Abram Williams, against the appellee, J. O. Reggan; and sought to have a conveyance executed by the complainant to the defendant, which was absolute in form, declared to be a mortgage, and that the complainant be let in to redeem. The facts of the case are sufficiently stated in the opinion.

Upon the submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled the relief prayed for, and ordered his bill dismissed. From this decree the complainant appeals, and assigns the same as error.

SUMTER LEA and GORDON MACDONALD, for appellants. If it appears that the instrument executed was intended to operate as a mere security for a debt then no matter how absolute the terms of the conveyance, it will be held, in a court of equity, to be a mortgage.—*Jordan v. Garner*, 101 Ala. 411; *Milner v. Stanford*, 102 Ala. 277; *Adams v. Pilcher*, 92 Ala. 474; *Hodges v. Verner*, 100 Ala. 612; *Moseley v. Moseley*, 86 Ala. 289; *Peagler v. Stabler*, 91 Ala. 308; *Mitchell v. Wellman*, 80 Ala. 16; *Patton v. Beecher*, 62 Ala. 579; *Turner v. Wilkinson*, 72 Ala. 361; Jones on Mortgages, § 324.

R. J. LOWE, *contra.*

HEAD, J.—The complainant, by his bill as last amended, seeks to have a conveyance, absolute in its terms which he and his wife executed to the defendant, on the 21st day of April, 1892, declared to be a mortgage and to be let in to redeem. The case, in its legal aspects, is not different from many that have been decided by this court. In *Reeves v. Abercrombie*, 108 Ala. 535, we collected our previous decisions in the cases where similar relief was sought, and re-stated the rule as to the

[Williams v. Reggan.]

measure of proof in the two classes, into which the decisions may be grouped. There, it was necessary to apply the rule, requiring strong and stringent evidence of the clear and certain intention and understanding of both parties that the instrument should operate as a mortgage. Here, the contestation is differently presensented. It was an undisputed fact, that after the execution of the conveyance, the complainant remained in possession of the property, it being his homestead, without payment of rent—a circumstance calling for explanation. In reply to the question propounded by his counsel, whether there was any agreement or understanding that the complainant should remain on the land, the defendant testified, "there was an agreement that Williams should remain on the land until the 1st day of November, 1892, in order that he might gather the crop on the place, and if he bought the place, he was not to pay any rent." If the conveyance was designed to operate according to its terms, the title and complete ownership passed absolutely to the grantee by the delivery of the deed entitling him to the crop then growing and to subsequent rents, as an incident to such ownership. The defendant's statement of the contemporaneous agreement is meagre as to details, but fairly construed, it is reasonably susceptible of the construction, that, according to his version, the repurchase of the place was discussed and provided for, in which event he was to be free from liability for rent during the intervening period and that, in any event, the complainant was to have the crop then growing on the place. We have, therefore, an admission by the defendant that the conveyance was subject to a verbal agreement, varying its effect, separately considered, that a contingency of repurchase was contemplated, and the terms thereof, to the relief of the complainant from rent, arranged. With this admission, the case is made very closely to resemble that of *Daniels v. Lowery*, 92 Ala. 519, and it is thereby brought within the influence of the broader rule, as to the measure of proof announced in that and similar cases, where the controversy was, not whether an unconditional sale or a mortgage was intended, as was the issue in *Reeves v. Abercrombie*, *supra*, but whether the transaction was a mortgage or a conditional sale, including in that designation, a sale with a right of re-pur-

chase. When the issue is thus presented, the court inclines to hold the conveyance to be a mortgage, and if there be doubt, resolves the doubt in favor of the mortgage theory. This it does for the manifest reason, that if it errs in so holding, no loss will be inflicted upon the grantee, made whole by a reimbursement of his outlay and interest, whereas, a mistake, committed against the grantor, might entail upon him hurtful consequences, without any compensating benefits.—*Cosby v. Buchanan*, 81 Ala. 574; *Turner v. Wilkinson*, 72 Ala. 361; *McNeil v. Norsworthy*, 39 Ala. 156; *Turnipseed v. Cunningham*, 16 Ala. 501.

. Proceeding to a consideration of the evidence, it may be premised that the record presents the same irreconcilable conflict, that we have so often encountered in similar cases. When the understanding between the parties, which induced the execution of the deed of April 31st, 1892, was reached, it is conceded they were alone. Both testify, and while they coincide in some particulars, they differ widely as to the terms of the agreement, upon which their minds then met. At the execution of the instrument, the complainant, his wife, the justice who took the acknowledgment and Secrest, the attesting witness, were present, but their accounts of what transpired at the time do not harmonize. Several persons testify, with more or less meagreness of detail, to statements said to have been made by the complainant, to the effect that he had sold his property to the defendant, Reggan, and had received the purchase price, while the witness Ingram, examined by the complainant, deposes, with great definiteness and particularity, to an interview with the defendant, after the witness had agreed, as he narrates it, to pay what the complainant said was a continuing indebtedness, wherein Reggan stated that he wanted the money that Williams owed him on the three acres of land, and "that his money was all he wanted." Neither of the parties to the litigation was examined in rebuttal nor interrogated originally in reference to these alleged statements, and hence, we have neither denial, admission, qualification nor explanation of either of the conversations attributed to him. Not a witness in the case appears to have been cross-examined by the opposite party, whether the deposition was taken by interrogatories or on oral examination. Verbal

admissions have never been regarded as the most trustworthy evidence; and as there is much reason to believe or to doubt those attributed to the one party as to the other, and as they cannot be reconciled, we think it will be safe to decide the case upon the testimony of the witnesses who depose to facts constituting the *res gestae* of the transaction, and upon the circumstances shedding light upon it, which the evidence satisfactorily establishes—a course we pursued, under similar circumstances, in *Daniels v. Lowery*, 92 Ala. 519.

The material facts may be thus presented: The complainant is a negro carpenter, more than fifty years of age. He is illiterate, being unable to either read or write, and knows nothing of accounts. He had purchased the three acres of land from one McCormack at the price of one hundred and twenty-five dollars, of which he or his wife paid in cash thirty-five dollars. The remaining ninety dollars he earned by building for the defendant, Reggan, certain houses the latter had contracted to erect for a coal mining company, and the amount was paid by Reggan directly to McCormack, who executed to the complainant a warranty deed on the 17th day of January, 1891. After his purchase he built a small house upon the land for a home and also erected another building upon it for use as a store, with a room or hall in the upper story for church, society and social gatherings. The latter building he rented, in January, 1892, to the defendant, who was merchandizing there in April of the same year when the deed, the subject of investigation, was made. The complainant prior to his negotiation with Reggan, had mortgaged the property to a bank at Pratt City to secure a sum of money, not exceeding $66.90. He also owed another party about $35. It does not appear the first debt was pressing for payment, and for it the property was ample security, worth, as the disinterested witness, McNeel, states, with the improvements, from $275 to $300. The second debt is not shown to have been a charge upon the place, or that the property, his exempt homestead, could have been subjected to its payment. It is conceded the complainant approached Reggan at the latter's residence, with a request that he advance the money to pay off the two debts. When this request was made is matter of dispute, the complainant fixing the time at a

[Williams v. Reggan.]

few weeks before the execution of the conveyance to Reggan, although the latter states the time definitely as November the 8th, 1891, more than five months before he procured the deed. Why he waited so long before procuring the deed, in the meantime renting the storehouse, and allowing the complainant to plant another crop, he offers no explanation. The complainant, as far as appears, had never proposed to sell his house, the only realty he possessed, and we may safely infer, in the absence of proof, that he did not desire to sell it, that he had not contemplated parting with it, when he applied to the defendant for a loan ; indeed, the defendant testified that the complainant coupled his request for the loan, with an offer to give a mortgage, which offer he says he declined, making however the counter proposition to pay these two debts and satisfy another demand he asserts he had against the complainant for merchandize and lumber, if the latter would give him a deed to the place. He states furthermore, that the complainant assented to this proposition. The version of the defendant, thus representing the complainant as agreeing to sell his homestead, in settlement of four items of debt, three of which, aggregating the larger part, were not charges upon it, and for which it was exempt, makes an unusual transaction, tested by the ordinary conduct of men of his means and station.

The complainant testified that after Reggan, upon his request, had taken care of the debt to the bank, and to the other party, he, Reggan, suggested that as one of them might die he ought to have security for his advancements, and he requested a mortgage, which the complainant says he readily agreed to give, to secure the amount so advanced. He does not include any store account or lumber bill ; indeed, while admitting he had received some lumber, he testifies he received it on account of an indebtedness to him for building other houses for Reggan. Whatever may have passed between the parties prior to April 21st, 1892, it is certain that the defendant, after having prepared or caused to be prepared a warranty deed, without the presence or participation of the complainant, took it to the complainant and his wife for execution. The recited consideration was two hundred and seven dollars, in hand paid, the receipt of which was acknowledged, which,

[Williams v. Reggan.]

however, was made up, as the defendant informs us, of the following items: $66.90 paid the bank, $35.75 paid into Kennedy's court, doubtless the debt owing Dake, $82 35 for lumber, and $21 for store account. It does not appear there was any explanation of the method of fixing the consideration, when the deed was presented for signature. We are not satisfied that the complainant knew what was stated, or that anything was in respect of what constituted consideration. The defendant and Secrest testify the deed was read over to him. He and his wife swear it was not, and they are corroborated by Hewitt, the justice of the peace, who went there at the instance of and in company with Reggan, to take the acknowledgments, and who says he merely explained to them it was a warranty deed conveying the title to the land. How clear a conception the grantor had, or rather how clearly he had no conception, of the explanation, and what his understanding was of the nature and purposes of his act, is shown by his reply to the justice, as proven by that officer: "Yes, I understand that. I owe Mr. Reggan some money and want to let him have the land until I can get the money to pay him." If Reggan expressed any dissent from this statement, the record does not disclose it. On the contrary, the justice concluded his account of what transpired, with the remark: "As we started away from the house, the last thing that was said by Reggan was, 'when you pay me the money of course the land will be yours.'" Substantially the same account is given by the complainant and his wife. The defendant and Secrest do not specially deny that these things were said; their narrations omit any reference to them.

The review of the evidence already made has disclosed several well recognized badges or *indicia* of a mortgage. The relation of debtor and creditor existed when the deed was made; the transaction began in an application for a loan of money; the grantor remained in possession without payment of rent; there was disparity between the price claimed to have been paid and the value of the property; there was no formal settlement, no lumber or store account was presented or receipted, and although the bank delivered its mortgage, and presumably the note, to the defendant, it is not shown he ever surrendered the note to the complainant. These

[Williams v. Reggan.]

facts have a strong tendency to support the claim that a mortgage was intended.

Enough has already been said to demonstrate that it does not clearly appear the transaction was a conditional sale. Upon that question a substantial doubt has been raised. Indeed it is difficult to escape the conviction, that both parties intended the deed to operate as a mortgage.

Although there is controversy as to whether the complainant intended to do more than secure the amount advanced by the defendant to pay Dake and the bank—it not being conceded he owed Reggan for lumber—yet he offers by his bill to pay whatever he may owe on a settlement, and he submits himself to the jurisdiction of the court. That full justice may be done the defendant, we will allow the deed to stand as security for whatever balance may remain, after a reckoning of all matters of debit and credit between them, as of the date of the execution of the deed, from which time the relation of mortgagor and mortgagee must be considered as existing between them. The defendant will be chargeable with some rents, and he, doubtless, will be entitled to charge the complainant with expenditures for repairs, taxes, &c. There will have to be an accounting on the principles which obtain in ascertaining the liability of a mortagagee in possession, and the credits to which he may be entitled, since the injunction, dissolved by the dismissal of the bill, does not appear to have been reinstated by a supersedeas bond, and the defendant, as the holder of the legal title, has secured, no doubt, possession of the whole property. The proper order of reference can be best made by the city court. If the accounting shows no debt remains, the complainant will be entitled to a surrender of his title papers, and a cancellation of the deed of April 21st, 1892; should a balance remain due, the city court, upon default in its payment by a fixed day, may order a sale of the property for its satisfaction.

The decree of the city court will be reversed, a decree here rendered declaring the deed to be a mortgage to secure whatever amount the complainant owed the defendant, after balancing the account, when the deed was executed, and the cause will be remanded for further proceedings in conformity to this opinion. Let the costs

of the appeal be taxed against the appellee. The city court will adjudge the costs of the suit when it finally disposes of the case.

Reversed, rendered and remanded.